[No. 78094-3. En Banc.]
Argued January 23, 2007. Decided August 23, 2007.

THE STATE OF WASHINGTON, *Petitioner*, v. GARY MICHAEL BENN, *Respondent*.

258

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for petitioner.

*David Zuckerman*, for respondent.

¶1 Owens, J. — We review a Court of Appeals' decision holding that Gary Benn's conviction for aggravated murder violates double jeopardy. We reverse the Court of Appeals' decision and hold that a jury's failure to find an aggravating factor during the penalty phase of a capital trial does not constitute an acquittal of that aggravating factor implicating double jeopardy. We affirm the Court of Appeals on the remaining evidentiary issues.

## FACTS

¶2 In 1990, a Pierce County jury convicted Benn of two counts of first degree murder and sentenced him to death. The jury unanimously found the existence of an aggravating factor—that Benn murdered the two victims as "part of

a common scheme or plan." RCW 10.95.020(10). The jury left the verdict form regarding the "single act" aggravating factor blank. *Id.* Benn unsuccessfully appealed his conviction in state court. However, a federal district court granted his writ of habeas corpus and vacated Benn's convictions. *Benn v. Wood*, No. C98-5131FDB, 2000 U.S. Dist. LEXIS 12741 (W.D. Wash. June 30, 2000), *aff'd sub nom. Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002).

¶3 The State recharged Benn with two counts of first degree murder and alleged, over Benn's objection, that the murders were committed as a "single act." The State did not seek the death penalty. The jury convicted Benn of two counts of first degree murder and found that the evidence supported the "single act" aggravating factor. The court then sentenced Benn to life in prison without the possibility of release. Benn appealed, arguing in part that the State violated double jeopardy principles when it realleged the "single act" aggravating factor. Benn argued that his first jury's silence on the aggravating factor constituted an implied acquittal terminating jeopardy.

¶4 Division Two of the Court of Appeals agreed with Benn. In a partially published opinion, the appellate court held that the jury's silence regarding the "single act" aggravating factor constituted an implicit acquittal of the factor for purposes of double jeopardy. The Court of Appeals affirmed the conviction, vacated the "single act" special verdict, and remanded the case for resentencing without the aggravating factor. *State v. Benn*, 130 Wn. App. 308, 123 P.3d 484 (2005). We granted the State's petition for review at 157 Wn.2d 1017, 142 P.3d 607 (2006).

## ISSUES

¶5 1. Did the blank verdict form on the "single act" aggravator constitute an implied acquittal implicating double jeopardy?

¶6 2. Did the trial court otherwise err in admitting and/or excluding evidence at trial?

## ANALYSIS

¶7 The double jeopardy clause states that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend V. Similarly, the Washington Constitution states that "[n]o person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. Washington's double jeopardy clause is essentially identical to its federal counterpart and thus affords no greater protection. *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000); *accord State v. Linton*, 156 Wn.2d 777, 782-83, 132 P.3d 127 (2006) (plurality opinion). The double jeopardy clauses prohibit the State from prosecuting a defendant for the same offense after acquittal. *State v. Graham*, 153 Wn.2d 400, 404, 103 P.3d 1238 (2005); *Linton*, 156 Wn.2d at 784 ("Acquittal of an offense terminates jeopardy and prohibits the State from trying the defendant a second time for the same offense.").

¶8 Benn contends that the blank verdict question regarding the "single act" aggravating factor constituted an implied acquittal terminating jeopardy and precluding the State's second prosecution for aggravated murder. Under the implied acquittal doctrine, a jury's silence on a charge may constitute an implied acquittal terminating jeopardy. *Green v. United States*, 355 U.S. 184, 190-91, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957); *accord State v. Davis*, 190 Wash. 164, 166, 67 P.2d 894 (1937). In *Green*, the jury was silent as to the charge of first degree murder during Green's first trial. 355 U.S. at 187. The Supreme Court held that Green's retrial for first degree murder violated "both the letter and spirit of the Fifth Amendment." *Id.* at 198.

¶9 Applying *Green*, the Court of Appeals held that the blank verdict form regarding the "single act" aggravating factor in Benn's first trial constituted an implied acquittal barring Benn's subsequent prosecution for the "single act" aggravating factor. The State argues that the Court of Appeals' reliance on *Green* was misplaced because double

jeopardy does not apply to aggravating factors.[1] This court reviews questions of law de novo. *State v. Watson*, 155 Wn.2d 574, 578, 122 P.3d 903 (2005).

A. *Do double jeopardy principles apply to aggravating factors?*

¶10  A jury's imposition of a life sentence in a capital case generally constitutes an acquittal of the death penalty, prohibiting the State from seeking the death penalty in the event of a retrial. *E.g.*, *Bullington v. Missouri*, 451 U.S. 430, 446, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). In *Bullington*, the Supreme Court held that jeopardy terminates when a jury acquits a defendant of the death penalty; thus, although the State may retry a defendant for the offense of murder, it may not seek the death penalty if a previous jury has found it unwarranted. *Id.*; *accord Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984) (holding that an acquittal of the sentence of death "bars any retrial of the appropriateness of the death penalty").

¶11  In the instant case, the State argues that the Court of Appeals erred by implicitly extending this general rule and holding that a jury's failure to find an aggravating factor during the penalty phase of a capital trial constitutes an acquittal of that aggravating factor. For support, the State relies on *Poland v. Arizona*, 476 U.S. 147, 106 S. Ct. 1749, 90 L. Ed. 2d 123 (1986). In *Poland*, the Supreme Court held that the State did not violate double jeopardy in seeking the death penalty upon retrial when the defendant was not acquitted of the death penalty in the first trial. *Id.* at 157. The *Poland* Court rejected the argument "that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes

---

[1] The State also argues, for the first time, that double jeopardy principles do not apply in noncapital sentencing procedures. With limited exception, this court will not consider issues not raised or briefed in the Court of Appeals. *State v. Halstien*, 122 Wn.2d 109, 130, 857 P.2d 270 (1993) ("An issue not raised or briefed in the Court of Appeals will not be considered by this court."). The State offers no reasoning why this court should consider its new argument. Thus, we decline to do so.

an 'acquittal' of that circumstance for double jeopardy purposes." *Id.* at 155. The Court stated that such a holding "would push the analogy on which *Bullington* is based past the breaking point." *Id.* at 156. The Court distinguished aggravating factors from other offenses, stating that aggravating factors "are not separate penalties or offenses" but rather " 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment." *Id.* (alteration in original) (quoting *Bullington*, 451 U.S. at 438). The State thus argues that double jeopardy principles do not apply to aggravating factors.

¶12 Benn, however, contends that *Poland* does not survive *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and its progeny. *Id.* at 609 (holding that aggravating factors are " 'the functional equivalent of an element of a greater offense' " for purposes of the Sixth Amendment (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000))). Despite *Ring*'s elevation of aggravating factors to the equivalent status of elements under the Sixth Amendment, *Poland*'s holding remains good law.

¶13 In the Supreme Court's post-*Ring* decision in *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003) (plurality opinion), Justice Scalia, writing for the plurality, held that double jeopardy protections did not prevent the State from retrying a defendant for the death penalty where a jury deadlocked during the penalty phase of his first trial. *Id.* at 108 (citing *Poland* with approval). Justice Scalia then turned to the question of *Ring* in a section of the opinion that garnered only a plurality. Joined by Justice Thomas and Chief Justice Rehnquist, Justice Scalia held that in a post-*Ring* world, " 'murder plus one or more aggravating circumstances' is a separate offense from 'murder' *simplicitier*." *Id.* at 112. "If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that 'acquittal' on the offense of 'murder plus aggravating

circumstance(s).' " *Id.* Under Justice Scalia's plurality, a State may retry a defendant for the death penalty unless the verdict forms establish that the jury, by unanimously rejecting all charged aggravators, "acquitted" the defendant of those aggravators and thereby created a " 'legal entitlement to a life sentence.' " *Id.* at 110 (internal quotation marks omitted) (quoting *Commonwealth v. Sattazahn,* 563 Pa. 533, 548, 763 A.2d 359 (2000)).

¶14 Even under Justice Scalia's plurality, double jeopardy principles do not apply to individual aggravating factors. Courts interpreting the *Sattazahn* decision have rejected Benn's argument that a jury may "acquit" a defendant of an individual aggravating factor. *E.g., Commonwealth v. May,* 587 Pa. 184, 204, 898 A.2d 559 (2006) ("*Sattazahn* speaks to the situation where the original jury did not find any aggravating circumstances, and, thus, the sentence of life imprisonment was statutorily mandated." (emphasis omitted)), *cert. denied,* 127 S. Ct. 557 (2006); *see also State v. Deruise,* 98-0541 (La. 4/3/01), 802 So. 2d 1224, 1243-44 (holding post-*Apprendi* "that a jury's failure to find an aggravating factor during the penalty phase of a capital trial does not constitute an acquittal of that aggravating factor"), *cert. denied,* 534 U.S. 926 (2001).

¶15 Had the jury in Benn's first case acquitted him of the death penalty, the State would not have been allowed to subsequently charge him for a capital offense without violating double jeopardy. However, Benn's first jury sentenced him to death. Thus, the State could have sought the death penalty again on retrial. A jury's failure to find the existence of an aggravating factor does not constitute an "acquittal" of that factor for double jeopardy purposes. Accordingly, we reverse the Court of Appeals on this issue.

### B. *Benn's Remaining Arguments*

¶16 Because we hold that Benn's retrial with the inclusion of the "single act" aggravating factor does not violate double jeopardy, we next query whether Benn's remaining arguments have merit.

### 1. Admission of Prior Testimony

■ ¶17 Benn contends that the trial court in his second trial improperly admitted Pete Hartman's prior testimony. In Benn's first trial, Hartman testified that Benn tried to hire him to kill victim Jack Dethlefsen. Benn, however, directed his attorney not to cross-examine Hartman because he feared Hartman would kill or harm his family.[2] Benn's attorney mistakenly believed he had to follow his client's direction and did not cross-examine Hartman.[3] Hartman died before Benn's second trial, and the trial court allowed the State to introduce Hartman's testimony from the first trial. Benn contends that admitting his prior testimony violated his Sixth Amendment confrontation clause rights and ER 804. We review the trial court's admission of evidence for abuse of discretion. *State v. Neal,* 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

■ ¶18 Both the Sixth Amendment's confrontation clause and ER 804(b)(1) bar admission of previous testimony of an unavailable witness, unless the defendant had a prior opportunity and similar motive to cross-examine the witness. *See Crawford v. Washington,* 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (holding that admission of out-of-court testimonial hearsay of an unavailable witness violates the confrontation clause unless the defendant had a prior opportunity to cross-examine the witness).

■■ ¶19 The Court of Appeals held that the admission of Hartman's testimony violated neither the Sixth Amendment's confrontation clause nor ER 804(b)(1) because Benn had the "opportunity and similar motive" to cross-examine Hartman in his first trial. Benn contends that his belief

---

[2] The trial court held a competency hearing based on Benn's fears. Defense experts testified that Benn was delusional, and the State's expert disagreed. The court ultimately concluded that Benn was competent to proceed. *State v. Benn,* 120 Wn.2d 631, 645-47, 845 P.2d 289 (1993).

[3] This court previously held that the failure to cross-examine Hartman, although mistaken, did not constitute ineffective assistance of counsel. *In re Pers. Restraint of Benn,* 134 Wn.2d 868, 894, 952 P.2d 116 (1998) ("No ineffective assistance claim can be made if the defendant preempts counsel's trial strategy.").

that Hartman would kill or harm his family if he cross-examined him deprived him of any "opportunity" to cross-examine Hartman within the meaning of the Sixth Amendment. The Court of Appeals concluded that Benn had the opportunity to cross-examine Hartman—despite his fear—and that he " 'had a substantially similar interest in asserting [his] side of the issue.' " *State v. Benn*, No. 31122-4-II, slip op. (unpublished portion) at 15 (Wash. Ct. App. Nov. 15, 2005) (quoting *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993)).

¶20 We affirm the Court of Appeals and hold that Benn had the opportunity and similar motive to cross-examine Hartman in his first trial. Neither the court nor the State prevented Benn from cross-examining Hartman, and he had a similar motive in asserting his side of the issue.

██ ¶21 Even if we were to conclude that the trial court erred in admitting Hartman's prior testimony, such an error is not grounds for reversal. Confrontation clause errors are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). When an error is of constitutional magnitude, the court must apply the "harmless error beyond a reasonable doubt" standard and query whether any reasonable jury would have reached the same result in the absence of the tainted evidence. *State v. Guloy*, 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985).[4]

¶22 In the instant case, Benn testified at trial that he came to the house of his victims and found them in a fight. He argued that victim Jack Dethlefsen shot victim Michael Nelson and then turned to shoot Benn. Benn testified that he fought for the gun and shot Dethlefsen in self-defense.

---

[4] If an error results from a violation of an evidentiary rule, the appellate court must query whether " 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *Neal*, 144 Wn.2d at 611 (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). The error is harmless " 'if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.' " *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

Testimony at trial, however, revealed otherwise. For example, Benn's neighbor Anthony Miller testified that Benn asked him to provide an alibi for him. 13 Verbatim Report of Proceedings (VRP) at 1564-65. The evidence also revealed that Benn changed his version of the events. Benn originally called 911 to report that he found the two victims already dead. Barbershop owner Larry Kilen testified that Benn called him the day after the murders and told him that he went to the house and found the two victims already dead. 12 VRP at 1332. Benn then changed his story and claimed he shot both victims in self-defense after they attacked him. 19 VRP at 2507-10. He also claimed that a person held a gun to his head and made him shoot the two victims. *Id.* at 2511. Benn then drew a diagram while in jail that detailed the events and depicted him as the murderer. *E.g.*, 18 VRP at 2453-61. Considering the other untainted evidence and Benn's varied version of the shootings, any error was harmless beyond a reasonable doubt. *Guloy*, 104 Wn.2d at 425-26.

### 2. Evidence from Treatises

¶23  Benn contends that the trial court erred when it did not allow his attorney to cross-examine the State's experts with learned treatises. A party may use textbooks or treatises to cross-examine an expert witness if the witness recognizes the textbook or treatise as authoritative, regardless of whether the expert relied on the treatise in forming an opinion. *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 437-38, 392 P.2d 317 (1964); *accord* ER 803(a)(18). The trial court in Benn's case prevented his attorney from using treatises to cross-examine the State's forensic experts Michael Grubb and Rod Englert. Specifically, Benn's attorney asked Grubb if he was familiar with Herb McDonnell's work in the area of blood spatter. 15 VRP at 1826. Grubb responded that he was familiar with the work, and Benn's counsel attempted to ask Grubb about McDonnell's definition of "high velocity blood spatter." *Id.* The State objected on

the basis that McDonnell was not a witness and not testifying. The trial court sustained the State's objection. *Id.*

¶24 The Court of Appeals concluded that the trial court should have allowed Benn's attorneys to question the experts with the learned treatises under ER 803(a)(18). Nonetheless, the Court of Appeals concluded that Benn did not make an offer of proof to the trial court and thus could not demonstrate how the court's ruling harmed him. For support, the Court of Appeals relied on ER 103(a)(2), which states that a party may not predicate an error upon a ruling excluding evidence unless the admission affects a substantial right and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

¶25 Courts interpreting ER 103(a)(2) have excused the absence of an offer of proof where "the substance of the excluded evidence is apparent either from the questions asked [or] the context in which the questions are asked." *State v. Ray*, 116 Wn.2d 531, 539, 806 P.2d 1220 (1991). The substance of the evidence was fairly apparent from Benn's questioning of the experts. However, even if the court were to consider the evidentiary error, the error must be prejudicial to warrant reversal.

¶26 Benn contends that the trial court's error precluded him from discrediting the experts regarding bloodstains found on Benn's shoes; however, he fails to describe how such testimony would have affected the outcome of the trial. Further, although he was not allowed to cross-examine the experts as to the treatise, he did cross-examine the experts on many other matters. *See* 14-16 VRP. In addition, although the trial court repeatedly prevented Benn's attorney from quoting McDonnell's treatise in his cross-examination of Grubb, Benn was nonetheless able to elicit his point that some experts believe that high velocity blood spatter must be less than 0.1 millimeter. *See* 15 VRP at 1833 ("And you would agree that their interpretation of high velocity blood spatter would say it has to be less than .1 millimeter?"). Thus, any alleged error was harmless.

### 3. Impeachment Evidence

¶27  Benn also contends that the trial court erred in excluding evidence he wanted to use to impeach the State's expert, Rod Englert. Benn first contends that the trial court improperly excluded a letter from the Ethics Committee of the American Academy of Forensic Sciences about Englert. The State argued that the letter was not discoverable or admissible. The trial court concluded that the letter contained mere unsubstantiated allegations and was collateral to the issues of the case. 3 VRP at 231. It thus denied Benn's motion to disclose the letter, sealed the letter from the parties unless opened by order of a court, and prevented Benn from impeaching Englert with the letter. The Court of Appeals concluded that it could not review the issue because neither party included the letter as part of the record on review. Likewise, without the letter or a request to unseal the letter, we are unable to determine whether the trial court erred in excluding the letter.

¶28  Benn also contends that the trial court improperly excluded Englert's testimony from other trials that Benn argued was inconsistent with his testimony in his trial. Although the Court of Appeals acknowledged that the trial court would have erred under ER 801(d)(1)(i) if it excluded prior, inconsistent testimony, it held that Benn did not make an offer of proof as to what the prior testimony was and how it was inconsistent. Thus, the Court of Appeals could not determine whether the trial court had in fact erred. *See* ER 103(a)(2). We agree and affirm the Court of Appeals on this issue.

### 4. Hearsay Statements of Jack Dethlefsen

¶29  Benn argues that the trial court improperly admitted an out-of-court statement of Jack Dethlefsen, one of the murder victims. The trial court allowed the State to ask Benn's brother Monte to testify that Dethlefsen told Monte that someone had previously beaten him up in the kitchen and he wanted to talk to Benn about the beating. 19 VRP at 2490.

¶30 The Court of Appeals concluded that although the trial court improperly admitted the hearsay statements, the error did not harm Benn. The Court of Appeals held that the statement was not important to the State's case and was actually consistent with Benn's case theory that the two murder victims had previously been in a fight with each other. We agree and hold that although the trial court erred in admitting the hearsay statements of Dethlefsen, the error did not prejudice Benn and was harmless.

### 5. Prosecutorial Misconduct

¶31 Benn contends that the prosecutorial misconduct in his first trial was so egregious that double jeopardy principles bar a retrial. The double jeopardy clause prohibits retrial following a mistrial when the State's misconduct is intended to "goad" the other party into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). Benn concedes that he did not move for a mistrial in his case; rather, "he raises the claim here to preserve it for possible federal review." Resp. to Pet. for Review at 18. Thus, this court denies Benn's argument as a basis for reversal of his conviction.

## CONCLUSION

¶32 We hold that the jury's silence on Benn's "single act" aggravating factor did not constitute an implied acquittal implicating double jeopardy. We thus reverse the Court of Appeals and reinstate Benn's sentence. We affirm the Court of Appeals on all remaining issues.

ALEXANDER, C.J., and MADSEN, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶33 SANDERS, J. (dissenting) — The majority says Gary Benn can be found guilty of an aggravating factor although he was acquitted of it 17 years ago. I disagree. The United States Supreme Court has made clear an aggravating

factor is equivalent to an element of a crime, and when one is charged with both an aggravator and with an underlying crime, it constitutes a greater aggravated crime. Therefore, double jeopardy applies. When Gary Benn was originally convicted of murder in 1990, the jury left the verdict form blank for the "single act" aggravating factor. Unless attended by some disagreement amongst the jury members, a blank verdict form is without question an implied acquittal. But the State ignored this and once again charged Benn with the single-act aggravator. This violates the Fifth Amendment to the United States Constitution.

¶34 The federal constitution provides, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[5] This is clear, unambiguous language. By simply applying the plain meaning of the Fifth Amendment, it is clear the majority's holding violates Benn's constitutional right; he is subject to the same offense—murder with a single-act aggravator— and twice put in jeopardy for that offense, initially threatened with death and now with life in prison.

¶35 But both federal and state courts have unfortunately developed a double jeopardy jurisprudence somewhat detached from the Fifth Amendment's language. We are now more reliant on parsing the meaning of particular elements than applying the plain meaning of the constitutional text in a straightforward manner. But even within the context of this analysis, the State clearly violated Benn's double jeopardy rights.

¶36 A defendant is entitled to protection against double jeopardy if: (1) jeopardy has attached, (2) jeopardy has terminated, and (3) the State seeks to put him in jeopardy for the same crime or offense. First, jeopardy attached when Benn's jury was originally empaneled to hear arguments concerning the single-aggravating factor. Second, the jury's

---

[5] Similarly, our state constitution provides, "[n]o person shall . . . be twice put in jeopardy for the same offense," Wash. Const. art. I, § 9, and the federal and our state constitutions afford almost identical protections. Majority at 261 (citing *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000)).

silence on the aggravator terminated jeopardy. *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957); *State v. Ervin*, 158 Wn.2d 746, 753-54, 147 P.3d 567 (2006). With nothing more, silence acts as an implied acquittal that terminates jeopardy. If there is formal disagreement entered on the record then there is no acquittal, implied or actual. *State v. Daniels*, 160 Wn.2d 256, 264, 156 P.3d 905 (2007) ("When the jury cannot decide a verdict, and disagreement is formally entered onto the record, then the State's one bite continues and the defendant can be retried."). But there was no such disagreement here so jeopardy terminated. And third, the State put Benn in jeopardy for the same aggravator by charging him with it a second time.

¶37 The State argues an aggravating factor at a sentencing proceeding is not tantamount to an element of a crime, and therefore jeopardy concerns are not implicated. The United States Supreme Court has roundly rejected this argument. In *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), the Court said that in the context of a defendant's Sixth Amendment right to a jury trial, sentencing factors are to be treated as elements of a crime. " '[W]hen the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.' " *Id.* at 605 (quoting *Apprendi v New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)); *see also id.* at 609 ("Because Arizona's enumerated aggravating factors *operate as 'the functional equivalent of an element of a greater offense,'* the Sixth Amendment requires that they be found by a jury." (emphasis added) (quoting *Apprendi*, 530 U.S. at 494 n.19)). Merely using the term "factor" or "aggravator" does not provide a legitimate reason for not treating the jury's finding as an element of an aggravated crime. We are not beholden to the legislature's semantic choice nor can the State overcome a defendant's constitutional rights by labeling an element as an aggravator.

¶38 The majority notes the State's reliance on *Poland v. Arizona*, 476 U.S. 147, 106 S. Ct. 1749, 90 L. Ed. 2d 123 (1986). Majority at 262-63 (citing *id.*). But *Poland* was limited to its facts, and its holding likely does not survive *Ring*. *Poland* was decided in the context of an Arizona statute that allowed judges to act as sole fact finders for aggravating and mitigating factors in death penalty cases. *Ring*, 536 U.S. at 609, held this sentencing scheme was unconstitutional when it held sentencing factors are functionally equivalent to criminal elements.

¶39 The majority also relies on *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003) (plurality opinion), to suggest *Poland* survived *Ring*'s clearly contrary holding. The majority says the *Sattazahn* Court cited *Poland* with approval. Majority at 263-64. But the *Sattazahn* Court mentioned *Poland* only in the context of discussing other double jeopardy cases. It never cited it with approval or suggested its holding was still good law. Indeed, the Court noted how *Poland* is factually distinguishable from its other double jeopardy cases: "We distinguished *Bullington*[6] and *Rumsey*[7] on the ground that in *Poland*, unlike in those cases, neither the judge nor the jury had 'acquitted' the defendant in his first capital-sentencing proceeding by entering findings sufficient to establish legal entitlement to the life sentence." *Sattazahn*, 537 U.S. at 108-09. Here we are concerned with whether the jury acquitted the defendant, and so, *Poland*, even if its narrow holding survived *Ring*, clearly is not relevant to us today.

¶40 *Sattazahn* does remind us jeopardy has not terminated if a conviction is overturned on appeal: "Where, as here, a defendant is convicted of murder and sentenced to life imprisonment, but appeals the conviction and succeeds in having it set aside, we have held that jeopardy has not terminated, so that the life sentence imposed in connection with the initial conviction raises no double-jeopardy bar to

---

[6] *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981).

[7] *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984).

a death sentence on retrial." *Id.* at 106. But here Benn was essentially prosecuted for two separate crimes. As the *Ring* Court said, " 'If the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact[,] . . . the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime.' " *Ring*, 536 U.S. at 605 (alterations in original) (quoting *Apprendi*, 530 U.S. at 501 (Thomas, J., concurring)); *see also Sattazahn*, 537 U.S. at 112 (plurality) (" '[M]urder plus one or more aggravating circumstances' is a separate offense from 'murder' *simpliciter*."). According to this analysis, Benn was convicted of first degree murder with the common-scheme aggravator and acquitted of first degree murder with the single-act aggravator.[8] And the State cannot now revive its case pertaining to that charge. It had its chance and lost.

¶41 Indeed, *Sattazahn* works against the majority. The Court tells us "an 'acquittal' at a trial-like sentencing phase . . . is required to give rise to double-jeopardy protections." *Sattazahn*, 537 U.S. at 107. A plurality of the *Sattazahn* Court imported *Ring*'s reasoning into a double jeopardy context:

> In *Ring v. Arizona*, we held that aggravating circumstances that make a defendant eligible for the death penalty "operate as the 'functional equivalent of an element of a greater offense.' " [*Ring*, 536 U.S.] at 609. We can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of Sixth Amendment's jury-trial guarantee and what constitutes an "offence" for purposes of the Fifth Amendment's Double Jeopardy Clause. In the post-*Ring* world, the Double Jeopardy Clause can, and must, apply to some capital-sentencing proceedings consistent with the text of the Fifth Amendment. If a jury unanimously concludes that a

---

[8] The single-act aggravator was not at issue when the Ninth Circuit Court of Appeals reversed Benn's conviction. So jeopardy continues as to the common-scheme aggravator, but not the single-act aggravator.

State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that "acquittal" on the offense of "murder plus aggravating circumstance(s)."

*Id.* at 111-12 (plurality) (citations omitted). The majority quotes from this language but claims it applies, if at all, only in cases of an actual acquittal. Majority at 263-64. But we treat implied acquittals exactly the same as an actual acquittal. *Ervin*, 158 Wn.2d at 753 ("This court has held that if a jury considering multiple charges renders a verdict as to one of the charges but is *silent* on the other charge, such action constitutes an implied acquittal barring retrial on those charges."). And the majority offers no explanation for making an exception because Benn was charged with a capital crime as opposed to any other crime. The most it offers is the State can seek the death penalty on retrial if the first jury sentenced him to death. But the first jury sentenced Benn to death based on the common-scheme aggravator, and therefore the State can seek death based only on that aggravated charge. If anything, the specter of the death penalty compels us to be even more vigilant of Benn's constitutional rights.

¶42 A jury was given a full and complete chance to find the single-act aggravator but remained silent. This silence acts as an acquittal that terminated jeopardy. The State should not, over a decade later, get a second chance now.

¶43 I dissent.

C. JOHNSON, J., concurs with SANDERS, J.