# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70720-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN ISAAC GRANT ROY, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: January 20, 2015 |
| | ) | |

Cox, J. — A jury convicted Benjamin Roy of first degree robbery of a financial institution. Roy appeals and argues that the trial court abused its discretion in allowing the State to elicit testimony that police officers obtained a sample of his deoxyribonucleic acid (DNA) by means of a search warrant. He also contends that insufficient evidence supports his conviction because the evidence failed to establish that the branch of Chase Bank where the robbery occurred is a financial institution within the meaning of RCW 9A.56.200. Because sufficient circumstantial evidence supports Roy's conviction and he fails to show any other error, we affirm.

On November 29, 2011, a man entered the Lake Stevens branch of Chase Bank just before closing. The man wore a dark hooded sweatshirt, inside out, with the hood pulled over his head, a bandana covering his face, and gloves. He yelled "Nobody fucking move" while holding an object covered in black plastic that appeared to be a gun and waving it from side to side. The man moved

toward Farah Siko, a lead teller and the only person at a teller station at the time. The man pointed the object at Siko and demanded all of the cash in her drawer. Siko activated an emergency switch under the counter to notify law enforcement and gave the man all the cash in her top drawer, approximately $3,000. After taking the cash, the man fled the bank on foot.

Around that same time, David Look was driving through the intersection in front of the Chase Bank branch when a man wearing a hooded sweatshirt darted into the street from the direction of the bank. Look had to slam on his brakes to avoid hitting the man. The hood fell off and Look briefly saw the man's face and described him as a white male, in his late twenties or early thirties with sandy hair.

Police officers arrived at the bank shortly after the robbery. They called for assistance from a K-9 unit. The dog followed a scent from the bank door to a nearby field consistent with the suspect's path as indicated by witnesses. The dog traced the scent to a discarded black hooded sweatshirt and a $100 bill that police officers found in the field. Near these items, police officers found fresh bicycle tracks. They did not locate a suspect.

When they returned the following day to search the area in the daylight, police officers recovered a garden hose nozzle shaped like a gun and covered in a black plastic. The police sent the items retrieved to the Washington State Crime Laboratory for DNA testing.

About a year after closing the case, Lake Stevens police officers learned from the crime lab that DNA from the evidence pertaining to the Chase Bank

robbery was tied to DNA evidence collected during the course of an investigation into a later crime committed by Benjamin Roy. That crime was an attempted robbery of a nearby drugstore. Based on information about the DNA match, police officers obtained a search warrant to obtain a DNA sample from Roy. Tests comparing Roy's DNA with DNA extracted from the sweatshirt showed that Roy was a substantial contributor to the mixed sample of DNA and that the probability of a match was one in 1,000 individuals.

The State charged Roy with first degree robbery committed within and against a financial institution, in violation of RCW 9A.56.200(1)(b). Based on the testimony of several bank employees and customers who witnessed the robbery, the testimony of police officers, a forensic scientist, and Look, and evidence of bank surveillance photographs taken during the commission of the robbery, the jury convicted Roy as charged. The court imposed a standard range sentence.

Roy appeals.

## EVIDENCE OF WARRANT TO COLLECT DNA

Before trial, the court granted Roy's motion in limine to exclude reference to his prior convictions and involvement in the subsequent attempted robbery of a drug store near the Chase Bank branch. The court also ruled that in order to explain how Roy became a suspect in the case approximately a year after the crime occurred, the State would be allowed to present limited testimony that a national DNA database was the means by which Roy was identified as a potential suspect, without mentioning his involvement in another crime. To this end, forensic scientist Mariah Low testified that she discovered that Roy was a

potential contributor to the DNA extracted from the evidence by running the DNA through a database about a year after the incident. Low said she then provided Roy's name to law enforcement.

Detective Jerad Wachveitl testified that upon learning that Roy was a potential match, he obtained a search warrant to obtain a DNA sample from him. The detective said it was "normal procedure" to obtain a warrant because law enforcement may not "normally just walk up to people on the street and ask them to give you samples of DNA." Detective Wachveitl also said he did not give Roy the opportunity to consent before procuring the warrant.

Roy objected to the admission of evidence that the police obtained a warrant for a DNA sample. He argued that evidence about the warrant was neither relevant nor necessary because the defense did not dispute that the police obtained a DNA sample from him and submitted it for testing. Roy argued that the evidence led to a "prejudicial impact that something negative" led to the issuance of the warrant. But noting that the testimony would not disclose any information about Roy's later attempted robbery and that jurors probably knew that collecting DNA from an individual involves a legal procedure, the court overruled Roy's objection and allowed the testimony.

As he argued below, Roy contends that the testimony about the warrant was not relevant because "it was undisputed that Roy's DNA was collected." Roy also maintains that the prejudicial impact far outweighed any marginal relevance of the evidence and the evidence was inadmissible under ER 403. ER 403 provides, in relevant part, that, "[a]lthough relevant, evidence may be

excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

To warrant reversal, evidentiary error must be prejudicial.[1] Roy claims that the testimony implied that the warrant was based on evidence of wrongdoing. He maintains that a juror "would reasonably recognize that a court had made an affirmative determination regarding Roy's guilt."

We disagree. It is unlikely that Roy suffered unfair prejudice under ER 403 because the jury learned that the police obtained a DNA sample by means of a warrant. Detective Wachveitl testified that the forensic scientist provided Roy's name as a potential contributor to the DNA after running the DNA through a database. He also testified that obtaining a warrant is normal procedure and that authorities cannot just ask people to give DNA without one. Most people understand that this is true. Roy does not challenge the admission of this testimony that clearly explained the basis for the warrant. The detective's testimony about the warrant explained the circumstances surrounding the warrant and did not reveal Roy's later crime under which the DNA match came to light. The reference to the warrant neither necessarily implied that Roy engaged in other misconduct nor suggested that the court that issued the warrant made any determination of guilt. Roy fails to establish unfair prejudicial error.

## SUFFICIENCY OF THE EVIDENCE

Roy claims insufficient evidence supports his conviction because the State failed to establish that he committed robbery against a financial institution. We again disagree.

---

[1] State v. Benn, 161 Wn.2d 256, 268, 165 P.3d 1232 (2007).

Under RCW 9A.56.200(1)(b), a person commits first degree robbery when "[h]e or she commits a robbery within and against a financial institution as defined in RCW 7.88.010 or 35.38.060." RCW 7.88.010(6) defines a "financial institution" as "a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state." In accordance with these statutes, the instructions informed the jury that in order to convict Roy, it had to find that "the defendant committed the robbery within and against a financial institution." The instructions further provided the following definition of financial institution:

> "Financial institution" means a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state.[2]

Although the first degree robbery statute alternatively allows a jury to find the entity is a financial institution under the definition set forth in RCW 35.38.060, the instructions included only the definition of "financial institution" as provided in RCW 7.88.010(6).

We review a defendant's challenge to the sufficiency of the evidence by asking whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[3] In answering this question, we view the evidence in the light most favorable to the State, drawing all reasonable inferences in favor of the State.[4] We consider circumstantial and direct evidence to be equally reliable.[5]

---

[2] RCW 7.88.010(6).
[3] State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999).
[4] State v. Gregory, 158 Wn.2d 759, 817, 147 P.3d 1201 (2006).
[5] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

In <u>State v. Liden</u>,[6] a jury convicted the defendant of first degree robbery based on a robbery that occurred at the Heritage Bank in Tumwater, Washington. Liden committed the robbery by informing the teller he wanted to make a deposit and after the teller gave him a counter check to provide his account number, he wrote "I have a gun" on the back of the check.[7] The teller gave Liden cash and he fled. Following his conviction, Liden filed a CrR 7.4 motion arguing that the State failed to provide any direct evidence that Heritage Bank was lawfully engaged in banking or had legal authority to accept deposits. While finding ample circumstantial evidence that the bank was a financial institution, the trial court determined that the State failed to provide direct evidence of the bank's legal status and therefore, failed to meet its burden of proof.[8] The court dismissed the first degree robbery conviction, and substituted and imposed a conviction for second degree robbery.

Division Two of this court reversed. Noting that the term "financial institution" is included in numerous crimes within the criminal code, the court stated that there was no evidence that the Legislature intended to depart in this instance from the long-standing rule that circumstantial and direct evidence are equally reliable. The court further held that requiring the State to submit direct, rather than circumstantial, evidence to prove that an entity is a financial institution would be "an absurd interpretation" of the law.[9]

---

[6] 138 Wn. App. 110, 156 P.3d 259 (2007).
[7] <u>Id.</u> at 113.
[8] <u>Id.</u> at 115.
[9] <u>Id.</u> at 118.

The court determined that the circumstantial evidence was sufficient to establish that Liden committed robbery against a financial institution. Specifically, the court pointed to the following evidence: (1) the counter check the teller provided to Liden included the text, "Reserved for Financial Institution Use" on the back, (2) the teller testified she was employed by the bank and was working in that capacity at the bank when the robbery occurred, and (3) customers who witnessed the robbery testified that they were there to make deposits.[10]

The circumstantial evidence here is even more significant than that in Liden. As in Liden, the teller who was threatened during the robbery testified that she was an employee of Chase Bank and was engaged in her capacity as a lead teller at the time of the robbery. Siko was employed at the time of trial as branch manager for a different branch of Chase Bank. Two other employees testified that they were working as personal bankers employed by Chase Bank when the robbery took place. According to their testimony, a personal banker at Chase is responsible to assist customers with opening, closing, and servicing accounts. Customers who witnessed the robbery testified about having checking accounts at Chase Bank, doing their banking at the Lake Stevens bank branch, and said they were at the branch to make deposits when the crime occurred.

Travis Olsen, one of the employees who witnessed the robbery and was employed by Chase Bank as an investment assistant at the time of trial, expressly testified that Chase Bank is a bank. He said that Chase operates under federal and state law in offering customer accounts and accepting

---

[10] Id. at 119.

8

deposits. Olsen said that his knowledge of the bank's legal status was based on his personal knowledge and day-to-day activities as a bank employee and also based on his knowledge of the deposit account agreement, a document that the Bank maintains. Olsen testified that the bank openly engages in banking and accepting deposits, openly advertises these services, and has never been closed down by legal authorities.

Roy contends that Liden was wrongly decided. He also argues that the evidence to establish Chase Bank's status as a financial institution suffers from the same deficiency as the evidence cited in Liden. According to Roy, the fact that bank employees and customers engage in certain activities does not lead to a reasonable inference that those activities are authorized by law. He maintains that Olsen's testimony was insufficient because he had no knowledge of Chase Bank's legal authority, his testimony about the deposit agreement was hearsay, and because the deposit agreement was not itself admitted into evidence. Although Roy states that he "takes no issue" with the holding of Liden, the essence of his argument is that only direct evidence can establish that an entity is authorized by state or federal law to accept deposits. We reject this position and agree with Division Two's decision in Liden. A reasonable jury could infer from the circumstantial evidence in this case that Chase Bank is a bank that is "financial institution" within the meaning of the controlling statutes.

Finally, Roy contends that cumulative errors prejudiced the outcome of the trial. Because Roy has failed to demonstrate any error, we reject his claim of cumulative error.[11]

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

---

[11] See State v. Price, 126 Wn. App. 617, 655, 109 P.3d 27 (2005).