# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71810-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARVIN GARRY KRONA, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 27, 2015 |

TRICKEY, J. — A jury convicted Marvin Krona of harassment, driving while under the influence (DUI), and driving while license revoked. The State presented sufficient evidence to support the jury's finding that Krona made a true threat and that the law enforcement officer's fear that Krona would carry out the threat was reasonable. The trial court did not err in admitting testimony about a law enforcement safety alert regarding Krona because the evidence was not hearsay and was logically relevant to an element of the crime. Finally, although the court miscalculated the offender score for the DUI count, the error did not affect Krona's standard range. We remand for the trial court to correct the offender score as to the DUI count, but otherwise affirm the judgment and sentence.

## FACTS

On the evening of July 13, 2013, James Grout observed a gray Oldsmobile slide sideways when turning onto an easement road on the side of his property and hit his fence. The car did not stop, but continued up the easement road adjacent to the fence. Grout had seen the car several times before and believed it to be associated with the

Krona family, neighbors who lived at the end of the easement road. Grout saw that the driver was a man with dark hair but could not identify him.

At around the same time, Grout's neighbor was standing at her window and saw Marvin Krona drive up the easement road in the gray Oldsmobile. Krona was slumped over and leaning toward the passenger side. Grout went to the Krona residence directly after the incident and told Krona's bother what had happened. Krona's brother noticed that Krona was sitting in the parked Oldsmobile and was visibly intoxicated. Grout called the police to report the incident.

Three sheriff's deputies responded to the reported hit and run. They learned through a law enforcement database about an "officer safety caution" regarding Krona, who was associated with the address.[1] They also learned that the safety caution was based on prior "threats to kill law enforcement and prior resisting arrest."[2]

The deputies found the Oldsmobile in a field by the house. As they approached the vehicle, the officers could see Krona slumped over the steering wheel. The driver's side door was open, the ignition key was turned on, but the engine was not running. There were two empty cans and three full cans of beer in the car and the deputies could hear the radio playing and the door chiming.

The deputies identified themselves and Krona confirmed his identity. Krona appeared to be highly intoxicated. Krona complied when asked to step out of the car, but needed assistance and because he was unsteady, the deputies placed him in handcuffs and had him sit on the ground. The officers arrested Krona and Deputy

---

[1] Report of Proceedings (RP) (Mar. 3, 2014) at 112.
[2] RP (Mar. 3, 2014) at 112.

Jacob Navarro advised him of his Miranda[3] rights. Krona interrupted during the advisement and said that he "kn[e]w better" than to drive because he was "suspended."[4]

Krona became uncooperative and physically resisted when the deputies attempted to place him in the patrol car. Once in the car, Krona began acting violently, angrily screaming "as loud as he could," and trying to hit his head on the partition.[5] He called Deputy Navarro and his field training officer various offensive names and expletives and stated that he and his friends would find them and "slice [them] up."[6] Krona told both deputies that his brother would find them and "slit [their] throats" and kill their families.[7]

Because of Krona's obvious intoxication, the deputies decided that he should be cleared by medical personnel before being booked in jail. Krona made numerous offensive comments and threats to medical staff while in transit to the hospital and at the hospital, telling staff he would "find them, beat their ass, [and] kill them."[8] Hospital staff placed Krona in four-point restraints, but he struggled to break free of the restraints and attempted to urinate on the hospital floor. At one point, Krona looked directly at Deputy Navarro and said he would "find [his] Indian ass and kill [him]."[9] Hospital staff drew Krona's blood several hours after his arrest, which revealed a blood alcohol level of 0.28.

The State charged Krona with driving under the influence, harassment, and driving while license revoked. At trial, Krona testified that he "drank a fifth of vodka"

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[4] RP (Mar. 4, 2014) at 30.
[5] RP (Mar. 3, 2014) at 123; RP (Mar. 4, 2014) at 43.
[6] RP (Mar. 3, 2014) at 123.
[7] RP (Mar. 4, 2014) at 45.
[8] RP (Mar. 3, 2014) at 125-26.
[9] RP (Mar. 3, 2014) at 126.

before he was arrested, but only after Grout came to the house to report damage to the fence.[10] He maintained that he was merely sitting in the Oldsmobile when the deputies arrested him and denied having driven the car. He did not dispute that he "said some nasty things" to the deputies during the arrest but insisted that he did not mean the things he said when intoxicated.[11] The jury convicted Krona as charged. Krona appeals.

ANALYSIS

## I. Sufficiency of the Evidence

Krona's harassment conviction was based on the specific threat to find and kill Deputy Navarro's "Indian ass." Krona contends that the State failed to prove (1) that this was a "true threat" and (2) that Deputy Navarro's fear that he would carry out the threat was reasonable under the circumstances.

To convict Krona of harassment as charged here, the State was required to prove beyond a reasonable doubt that he (1) without lawful authority (2) knowingly threatened (3) to cause bodily harm immediately or in the future (4) to a criminal justice participant performing official duties at the time the threat was made and (5) the criminal justice participant reasonably feared that the threat would be carried out. RCW 9A.46.020(1)(a)(i), (2)(b)(iii).

Where, as here, a criminal statute implicates speech, the State must prove both the statutory elements of the offense and that the speech was not protected by the First Amendment. State v. Kilburn, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004). Because a threat is pure speech, the harassment statute is limited in its reach to "true threats."

---

[10] RP (Mar. 4, 2014) at 105.
[11] Clerks Papers at 111, 120.

4

State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013) (interpreting RCW 9A.46.020);

Watts v. United States, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969).

> A "true threat" is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person. A true threat is a serious threat, not one said in jest, idle talk, or political argument. Under this standard, whether a true threat has been made is determined under an objective standard that focuses on the speaker.

Kilburn, 151 Wn.2d at 43-44 (internal citations and quotation marks omitted); accord

Allen, 176 Wn.2d at 626; State v. Schaler, 169 Wn.2d 274, 287, 236 P.3d 858 (2010).

A statement can constitute a true threat even if the speaker has no actual intent to cause bodily injury. Kilburn, 151 Wn.2d at 46. One reason that a true threat is unprotected speech is because it arouses fear in the person threatened and that fear does not depend on the speaker's intent. Kilburn, 151 Wn.2d at 46. Therefore, a statement will be considered a true threat if a "reasonable speaker would foresee that the threat would be considered serious."[12] Schaler, 169 Wn.2d at 283.

Generally, the test for determining sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the elements of the crime were established beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. Salinas, 119 Wn.2d at 201. We defer to the trier of fact's

---

[12] In his briefing before this court, Krona noted the United States Supreme Court's grant of certiorari in Elonis v. United States, __ U.S. __, 135 S. Ct. 2001 (2015), anticipating that the Court would address the true threat exception to the First Amendment's protection of free speech. However, the Court resolved the case based on its construction of the federal criminal statute and it was therefore "not necessary to consider any First Amendment issues." Elonis, 135 S. Ct. at 2012. Accordingly, we rely on the definition of "true threat" established by our jurisprudence.

resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). However, because of the First Amendment implications, we must engage in an independent review of the "crucial" facts that involve the legal determination of whether the speech is unprotected. Kilburn, 151 Wn.2d at 52.

Deputy Navarro testified that Krona was looking directly at him and when he explicitly threatened to find and kill his "Indian ass." Krona points to evidence of his obvious intoxication, the fact that he was in handcuffs or otherwise restrained during virtually the entire encounter, and to the evidence that he made multiple threats directed at numerous individuals. He claims that under these circumstances, no reasonable person would foresee that his threat to kill Deputy Navarro would be interpreted as a serious expression of intention to harm the officer. And Krona claims that in this context, no reasonable criminal justice participant would fear that Krona would "single him out of all the people threatened and carry out his threat in the future."[13]

Certainly, there was ample evidence that Krona was extremely intoxicated and that, when he made the threat, he did not have the immediate means to carry it out. But the record also fairly suggests that he was in control of his faculties to the extent that he was initially able to comply with and respond to the deputies' questions and requests. And his demeanor when he threatened to kill Deputy Navarro was unmistakably angry and aggressive. He made the threat in the context of sustained, escalating, and violent attempts to resist law enforcement and medical staff as they transported and medically assessed him. A reasonable person in Krona's position, under these circumstances, would have expected Deputy Navarro to take his threat seriously, not as a joke, idle

---

[13] Appellant's Br. at 10.

talk, or exaggeration. There is sufficient evidence in this record for the trier of fact to conclude beyond a reasonable doubt that the threat at issue was a true threat.

Deputy Navarro also testified that he feared that Krona would carry out his threat, and that his concern was sufficient that he notified his spouse. This is ample evidence of his subjective fear. And again, we consider context in evaluating whether the deputy's fear was reasonable. Deputy Navorro explained that he was concerned about the threat because it was not a "common" or blanket threat that could be aimed at any number of people. It was directed at him in particular. And the context of the threat was Krona's increasingly belligerent and unpredictable behavior that began as soon as Deputy Navarro attempted to place him in the patrol vehicle. It is true that he did not have the immediate means to carry out the threat because he was restrained. But the threat he made was to harm or to kill the officer in the future. See RCW 9A.46.020(1)(a)(i). Under the circumstances, the evidence was sufficient for the trier of fact to conclude that Deputy Navarro reasonably feared that Krona would carry out his threat against him sometime in the future after he was released from jail.

II. Officer Safety Caution

Krona challenges the trial court's admission of the testimony about the officer safety caution database entry based on previous threats against law enforcement and incidents of resisting arrest. He contends that the testimony was inadmissible because it was hearsay, unfairly prejudicial, and improper propensity evidence. He also contends that admission of the evidence violated his right to confront witnesses. We review de novo whether a statement was hearsay, and a trial court's admission of

testimony for an abuse of discretion. State v. Edwards, 131 Wn. App. 611, 614, 128 P.3d 631 (2006); State v. Bourgeois, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997).

Before trial, the State moved to admit the testimony, arguing that it was relevant to an element of the crime: Deputy Navarro's subjective and reasonable belief as a criminal justice participant that the threat would be carried out. The court granted the motion, observing that even if the information in the database was incorrect, it was still relevant to Deputy Navarro's state of mind.

After Deputy Navarro testified about the officer safety caution and the factual basis for it, the court provided a limiting instruction, stating that "Deputy Navarro's testimony about officer safety caution information" was to be considered by the jury "only as to how it may relate to the deputy's state of mind and for no other purpose."[14]

An out-of-court statement introduced to prove the truth of the matter asserted is generally inadmissible under the prohibition against hearsay. ER 801(c), 802. On the other hand, statements are not hearsay if they are not offered to prove the truth of the matter asserted. State v. Chambers, 134 Wn. App. 853, 859, 142 P.3d 668 (2006). "A statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement." Edwards, 131 Wn. App. at 614.

Krona asserts that the evidence about the officer safety caution was relevant only if true. But as the trial court observed, it made no difference to the State's case whether or not the assessment of danger was accurate. The knowledge of the officer safety caution, even if it was a mistake or based on inaccurate information, contributed to Deputy Navarro's subjective evaluation of the threat and was logically relevant to the issue of whether it was reasonable for the deputy to believe that Krona would harm him.

---

[14] RP (Mar. 3, 2014) at 113.

The trial court did not err in concluding that the evidence was not offered as substantive proof and was not hearsay.[15]

The State did not rely on the evidence to show that Krona had previously threatened law enforcement officers or that he was, in fact, a dangerous person. Contrary to Krona's argument, the State's closing argument, read as a whole, demonstrates that State relied on the evidence only for the purpose of arguing that the deputy's subjective fear was reasonable. And the court specifically directed the jury to consider the evidence for only this purpose.

For largely the same reason, the evidence did not violate Krona's confrontation rights. The confrontation clause bars the admission of testimonial hearsay statements when the declarant is unavailable to testify and the defendant has not had an opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 53-54, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Testimonial statements include those created solely for evidentiary purposes and those created for the purpose of establishing or proving past events potentially relevant to later prosecution. Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011); Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). And even when statements are testimonial, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 60 n.9. The apparent purpose of the database entry here was to protect officers in the field, not to prove the prior acts in a criminal

---

[15] Krona contends that even if Deputy Navarro's testimony about the officer safety caution was relevant to his state of mind, it was error to allow the other two deputies to present similar testimony about the database entry. However, that evidence was not only cumulative but because each deputy testified about what they collectively learned from the database entry, the testimony of the other deputies' was also relevant to Deputy Navarro's state of mind.

prosecution. And again, because the statements were not admitted to prove the truth of the matter asserted, admission of the evidence did not violate Krona's right to confront witnesses against him.

Finally, for the first time on appeal, Krona claims the testimony about prior threats against law enforcement was inadmissible propensity evidence under ER 404(b) and unfairly prejudicial under ER 403. However, because Krona did not object on this basis below and because evidentiary errors under ER 404(b) and ER 403 are not of constitutional magnitude, they cannot be raised for the first time on appeal. State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984); RAP 2.5(a)(3). And moreover, to warrant reversal, an evidentiary error must be prejudicial. State v. Benn, 161 Wn.2d 256, 268, 165 P.3d 1232 (2007). Even if the evidence showed his propensity to threaten law enforcement officers, Krona conceded that he made threats and offensive comments during the incident. His defense was that the threats were not serious and that given the circumstances, the deputy in question did not reasonably fear that he would carry out any of the threats.

III. Offender Score

Krona contends that the trial court miscalculated his offender score for the felony counts of DUI and harassment. He did not challenge the State's calculation of his criminal history at sentencing. Nevertheless, a defendant may challenge an offender score calculation for the first time on appeal. State v. Arndt, 179 Wn. App. 373, 388 n.9, 320 P.3d 104 (2014). We review de novo a trial court's calculation of a defendant's offender score. State v. Wilson, 113 Wn. App. 122, 136, 52 P.3d 545 (2002).

10

With respect to the DUI conviction, Krona contends that the sentencing court erred by including in the offender score prior felony convictions for taking a motor vehicle without permission and attempting to elude, and his current felony conviction of harassment.

The court calculated Krona's offender score for the DUI as nine. His judgment and sentence lists nine prior convictions, but does not specify which of those convictions were included in the score for the DUI conviction. It is clear from the record, however, that Krona's offender score for the DUI was calculated as follows: two points for prior felony DUI convictions, five points for prior non-felony convictions for DUI and reckless driving, one point for his other current DUI felony conviction, and one point for his community custody status. Therefore, Krona's prior convictions for attempt to elude and taking a motor vehicle were not included in the DUI offender score and he does not challenge the inclusion of the felony DUI convictions or any non-felony DUI and other serious traffic offense as beyond the scope of the governing statute, former RCW 9.94A.525(2)(e) (2011).[16]

The State admits, however, that harassment is not one of the offenses that may be included in the offender score for DUI under former RCW 9.94A.525(2)(e). Therefore, the State concedes that Krona's offender score for DUI should not have

---

[16] At the time of Krona's offense, former RCW 9.94A.525(2)(e) provided as follows:
> If the present conviction is felony driving while under the influence of intoxicating liquor or any drug (RCW 46.61.502(6)) or felony physical control of a vehicle while under the influence of intoxicating liquor or any drug (RCW 46.61.504(6)), prior convictions of felony driving while under the influence of intoxicating liquor or any drug, felony physical control of a vehicle while under the influence of intoxicating liquor or any drug, and serious traffic offenses shall be included in the offender score if: (i) The prior convictions were committed within five years since the last date of release from confinement (including full-time residential treatment) or entry of judgment and sentence; or (ii) the prior convictions would be considered "prior offenses within ten years" as defined in RCW 46.61.5055.

included his current conviction for felony harassment and the score should have been eight, rather than nine. But whether the score was eight or nine, Krona's standard range sentence was 60 months, the statutory maximum sentence for his class C felony. RCW 9.94A.510. Thus, the error did not affect Krona's standard range.

With respect to the harassment conviction, Krona contends that the evidence demonstrates that the same two prior convictions, his 1985 conviction for taking a motor vehicle and 1995 conviction for attempting to elude, "washed out" and should not have been included in the offender score.

Krona's offender score for purposes of the harassment conviction was six, based on the following: four points for prior convictions; one point for his other current felony DUI conviction; and one point for his community custody status. The four prior convictions consisted of the 1985 and 1995 felony convictions and two 2009 felony DUI convictions. Krona does not dispute that the State provided certified copies of the judgments and sentences for each of the prior convictions included in the offender score calculation.

Nonetheless, Krona claims the court improperly included the 1985 and 1995 convictions because the State failed to meet its burden to prove the facts or convictions necessary to establish that these convictions had not washed out under RCW 9.94A.525(2)(c). In other words, Krona maintains that the State was required to prove by means of certified judgments and sentences each intervening conviction necessary to demonstrate that the crimes did not wash out. We disagree.

Krona's reliance on the Supreme Court's decisions in State v. Ford, 137 Wn.2d 472, 479, 973 P.2d 452 (1999) and State v. Hunley, 175 Wn.2d 901, 910, 287 P.3d 584

(2012), is misplaced. These cases establish that the State must prove the existence of prior convictions included in the offender score by a preponderance of the evidence and that the best evidence for discharging this burden is a certified copy of the judgment and sentence. See Ford, 137 Wn.2d at 479-80. The State met its burden of proof as set forth in Ford and Hunley.

Class C prior felony convictions, other than sex offenses, are not included in the offender score if, since the last date of release from confinement pursuant to a felony conviction or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction. RCW 9.94A.525(2)(c). The evidence in the record, including the State's understanding of Krona's criminal history that Krona specifically agreed to when he pleaded guilty to the felony DUI charges in 2009, establishes that subsequent to his 1985 conviction for taking a motor vehicle without permission, Krona was convicted of misdemeanors in 1986, 1987, 1988, 1989, 1991, 1992, and 1994. Similarly, after his 1995 conviction for attempting to elude, Krona was convicted of misdemeanors in 1996, 1999, 2002, 2003, 2006, 2007, and 2008. Then, he was sentenced in January 2009 to 60 months of confinement followed by community custody on the two felony DUI counts. Contrary to Krona's argument, the evidence does not demonstrate that the 1985 and 1995 convictions washed out.

Krona demonstrates no error with respect to his offender score for harassment. Because Krona's offender score for the DUI count should have calculated as eight, we direct the trial court to correct the offender score computation on the judgment and

sentence. But, as explained, because the change does not affect the standard range, there is no need to conduct a new sentencing hearing.

IV. Statement of Additional Grounds

In a statement of additional grounds, Krona challenges the sufficiency of the evidence supporting his DUI conviction. While not entirely clear, Krona appears to suggest various reasons why the jury should have discredited the testimony of the State's witnesses and argues that the jury should have drawn certain inferences in his favor. But the jury was not required to accept Krona's testimony or his interpretation of the evidence. The testimony of the State's witnesses was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that he drove the Oldsmobile on July 13, 2013, while under the influence of alcohol.

Krona also argues, based on State v. Crediford, 130 Wn.2d 747, 927 P.2d 1129 (1996), that his conviction is constitutionally infirm because the burden was placed upon him to prove the affirmative defense that his blood alcohol level was above the legal limit because of alcohol consumed after he drove. However, the jury instructions specifically informed the jury that the State bore the burden of proving beyond a reasonable doubt that the defendant did not consume alcohol after driving or that the alcohol he consumed after driving did not cause his blood alcohol level to exceed the legal limit.[17]

Finally, Krona contends that the State knowingly presented false evidence in support of the DUI charge and that his trial counsel was ineffective for failing to investigate and present certain pieces of evidence. Because these claims involve

---

[17] Although we grant Krona's motion to supplement with additional authority, because of the jury instructions assigned the burden of proof to the State, State v. W.R., Jr., 181 Wn.2d 757, 765, 336 P.3d 1134 (2014), is inapplicable.

14

matters outside the record before us on direct review, the appropriate means of raising these claims is through a personal restraint petition. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

We remand and direct the trial court to correct the offender score computation for the DUI count on the judgment and sentence, and otherwise, affirm.

Trickey, J

WE CONCUR: