226 P.3d 246 (2010)
STATE of Washington, Respondent,
v.
Robin Douglas HYLTON, Appellant.
No. 38575-9-II.
Court of Appeals of Washington, Division 2.
March 9, 2010.
*248 Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, WA, for Appellant.
Lori Ellen Smith, Lewis Co. Prosecuting Atty. Office, Douglas P. Ruth, Lewis County Pros. Office, Chehalis, WA, for Respondents.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Robin Douglas Hylton appeals his conviction for third degree child rape, arguing the trial court erred in (1) denying his jury waiver, (2) denying his right to present a defense by excluding certain evidence, (3) retroactively applying the statutory "abuse of trust" aggravating factor as the basis for an exceptional sentence, and (4) imposing an exceptional sentence following his second trial where the State had not alleged the aggravating factor in his first trial and offered no new factual basis, raising a presumption of vindictiveness.[1] Hylton also argues that the jury instruction on "abuse of trust" was unconstitutionally vague, and that the prosecutor committed prosecutorial misconduct by improperly vouching for witnesses. Finding no reversible error, we affirm.

FACTS
¶ 2 The State originally charged Robin Douglas Hylton with three counts of child rape stemming from a series of events that allegedly occurred in 2004. At a bench trial, the trial court convicted Hylton of one count of third degree child rape for an incident on or around Thanksgiving 2004. The court acquitted Hylton of the remaining counts. Before sentencing, the trial court vacated the conviction and granted Hylton a new trial based on newly discovered evidence from witnesses who placed Hylton in California at the time of the alleged rape in Lewis County.
¶ 3 On November 5, 2007, the State filed a fourth amended information alleging, in part, that "the defendant used his position of trust or confidence to facilitate the commission of the current offense as provided ... in RCW 9.94A.535(3)(n)." Clerk's Papers (CP) at 178-79, 187.
¶ 4 Before the new trial, the court, without inquiry or comment, denied Hylton's request to waive a jury trial.[2] The court also denied Hylton's motion to introduce evidence that Lisa Coward, the victim's mother and Hylton's ex-girlfriend, abused and manipulated both her daughters. The court ruled that Hylton had not established a connection between the alleged abuse-manipulation and any trial issue.
¶ 5 At trial, the State presented evidence that Hylton sexually assaulted A.A.A. around Thanksgiving 2004, including medical testimony that her hymen was torn sometime *249 between April 2002 and May 2005. Hylton proposed to testify that A.A.A. told him she had been sexually active with at least one boy after April 2002, which would explain the tear in her hymen. The court rejected the testimony as hearsay and irrelevant.[3] A.A.A. later testified that between her sexual assault exams in 2002 and 2005, only the defendant penetrated her vagina. In closing, the State argued there was no evidence to support that anyone other than Hylton penetrated her vagina between those dates.
¶ 6 Hylton called witnesses who testified they were with him in California during Thanksgiving 2004. Julie Miller testified she had spent an evening with him in Idyllwild, California during the Thanksgiving holiday in 2004. Hylton attempted to corroborate Miller's statement by introducing an entry from her journal that contained Hylton's name inside a hand drawn heart covering the dates of Thanksgiving and the following Friday. The court sustained the State's objection to Hylton's motion to admit the journal page into evidence on the grounds of hearsay, foundation, and relevance.
¶ 7 Coward testified that she picked up Hylton at the airport the day before Thanksgiving 2004, and that he stayed at her house for the holiday. She further testified that she bore no ill will toward Hylton and that she had no problem with him maintaining contact with her children after their break-up. Before her cross examination, Hylton informed the court that he intended to use a string of e-mails to show that "she was threatening me with something," and that it was "a pattern of behavior." Report of Proceedings (RP) (June 3, 2008) at 356-57. Hylton also claimed the e-mails were contrary to her testimony that she bore him no ill will and that she had no problem with his continued contact with the girls. After attempting to authenticate the first e-mail, Hylton moved to enter it into evidence. The court excluded this e-mail as hearsay and for lack of foundation. Hylton sought to establish the foundation for the remaining e-mails, but never offered them into evidence.
¶ 8 Hylton's defense focused on his California alibi, and each side presented family members and friends who supported or refuted the alibi. In addition, the State presented testimony from an airline employee that a Robin Hylton had flown from Ontario, California to Portland, Oregon on November 22, just before Thanksgiving, and returned from Portland to Ontario on November 28, just after Thanksgiving. The State also presented evidence of a taped phone conversation between A.A.A. and Hylton in which she accused him of the improper conduct ("a nightmare"), and he responded that blaming him was "a waste of time," that he had said he was sorry, and that he hoped she could forgive him; he never denied the rape during this conversation. RP (June 3, 2008) at 219-234.
¶ 9 During closing arguments, the prosecutor admonished the jury that they were the sole judges of credibility and they alone assessed the weight of the witnesses' testimony. In discussing A.A.A.'s testimony, the prosecutor stated, "You can tell, body language, what she [A.A.A.] was saying, the whole package, she was telling the truth." RP (June 4, 2008) at 563-64. He closed his final argument by stating that "she's telling us a true story."[4] RP (June 4, 2008) at 570. The prosecutor described Detective Brown, who investigated the alleged sexual assault, as a "straight shooter, very credible, very believable," claiming that she would not do anything to "affect her job." RP (June 4, 2008) at 564. The prosecutor implied that the State's witness, Sandra Eschbach, recognized there could be criminal consequences if she lied. He also commented that while the jury would never know if the defendant lied, "if evidence came up that a State's witness lied in trial, you can imagine what the State might then do with that information. Leave that to you." RP (June 4, 2008) at 564-65.
¶ 10 The jury received a special verdict form, which asked, "Did the defendant, Robin Douglas Hylton, use his position of trust *250 or confidence to facilitate the commission of the crime of Rape of a Child in the Third Degree as charged?" CP at 118. The jury instructions on the special verdict form did not define "position of trust or confidence," or describe any required nexus between the position of trust and the crime. CP at 135.
¶ 11 The jury convicted Hylton of third degree child rape, finding that he abused a position of trust to facilitate the commission of the crime. The judge imposed an exceptional sentence of 50 months' confinement and community custody for up to 48 months.

ANALYSIS

I. Aggravating Sentencing Factors

A. Retroactive Application of the Abuse of Trust Factor

¶ 12 Hylton argues that the aggravating factor for abuse of trust, statutorily enacted in 2005, cannot be retroactively applied to his crime under (1) RCW 10.01.040, also known as the savings clause and (2) the ex post facto clauses of the state and federal constitutions. We disagree.

i. Background
¶ 13 Before 2005, the Sentencing Reform Act's (SRA) aggravating factor for abuse of trust was limited to economic cases. Former RCW 9.94A.390(2)(d)(iv) (2000), recodified as RCW 9.94A.535 (Laws of 2001 ch. 10, § 6). Washington courts, however, justified exceptional sentences where the defendant utilized a position of trust to facilitate noneconomic crimes. State v. Harp, 43 Wash.App. 340, 343, 717 P.2d 282 (1986) (imposing exceptional sentence for second degree statutory rape and indecent liberties by forcible compulsion consistent with RCW 9.94A390(2)); State. v. Fisher, 108 Wash.2d 419, 425-26, 739 P.2d 683 (1987) (a sentencing judge may rely on this factor in cases involving noneconomic as well as economic offenses); State v. Jennings, 106 Wash.App. 532, 550, 24 P.3d 430 (2001) (recognizing RCW 9.94A.390(2)(d)(iv) as the basis for applying an aggravating factor for abuse of trust in noneconomic crimes); see also State v. Armstrong, 106 Wash.2d 547, 550, 723 P.2d 1111 (1986) (the nonexclusive and illustrative nature of SRA's list of aggravating factors justifies the use of such factors for noneconomic crimes). Thus, a sentencing court could find abuse of trust as an aggravating factor in noneconomic crimes at common law.
¶ 14 The legislature added abuse of trust to the SRA as an aggravating factor for all criminal offenses on April 15, 2005.[5] Laws of 2005, ch. 68, § 3, codified as RCW 9.94A.535. The amendment's language is identical to RCW 9.94A.390(2)(d)(iv). See RCW 9.94A.535(n) ("[t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense"). The legislature specifically stated its intention to "create a new criminal procedure for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances." Laws of 2005, ch. 68, § 1. The codified abuse of trust factor is, however, slightly narrower in scope than its common law predecessor. See State v. Chadderton, 119 Wash.2d 390, 398, 832 P.2d 481 (1992) (reckless abuse of trust may operate as an aggravating factor by analogy, rather than strictly under the statute, which by its literal language applies only to purposeful misconduct). Under the statutory language of the 2005 amendment, the factor applies only to purposeful misconduct. RCW 9.94A.535(n).

ii. Statutory Retroactivity Analysis
¶ 15 Hylton argues the addition of the aggravating factor for abuse of trust was a substantive change to the SRA. He concedes the procedures for imposing an aggravating factor in the 2005 amendments apply to conduct that occurred before the date of the *251 amendments. State v. Pillatos, 159 Wash.2d 459, 477, 150 P.3d 1130 (2007). But Hylton contends that because aggravating factors are now considered the functional equivalent of elements of the crime under Apprendi v. New Jersey, 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the addition of abuse of trust to the SRA's list of aggravating factors constitutes a substantive change to the law. Thus, according to Hylton, it cannot be applied retroactively under RCW 10.01.040.
¶ 16 RCW 10.01.040 generally requires that crimes be prosecuted under the law in effect at the time they were committed. Pillatos, 159 Wash.2d at 472, 150 P.3d 1130. RCW 10.01.040 in relevant part (the savings clause) provides:
Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act.
But the savings clause applies only to substantive changes, not procedural ones. Pillatos, 159 Wash.2d at 472, 150 P.3d 1130; State v. Hodgson, 108 Wash.2d 662, 669-70, 740 P.2d 848 (1987) (by its own terms, RCW 10.01.040 saves only substantive rights and liabilities). Thus, the relevant question is whether RCW 9.94A.535 alters Hylton's substantive rights.
¶ 17 As preliminary matter, Hylton's reliance on Apprendi is misplaced. There, the U.S. Supreme Court recognized that elements of an offense and sentencing enhancements must be treated as functional equivalents in order to comport with the Sixth Amendment's jury-trial guarantee. Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348; see also Washington v. Recuenco, 548 U.S. 212, 220, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). Apprendi does not support the contention that aggravating factors are functionally equivalent to elements of the crime in all instances; the court held only that any fact that would increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348; see also State v. Clarke, 156 Wash.2d 880, 890-91, 134 P.3d 188 (2006) (the Sixth Amendment does not bar judicial fact finding relating to a sentence that does not exceed the relevant statutory maximum). Washington State courts have not read Apprendi as requiring courts to treat aggravating factors as elements of the crime for all purposes. See e.g., State v. Benn, 161 Wash.2d 256, 262-64, 165 P.3d 1232 (2007) (although aggravating factors are elevated to equivalent status of elements under the Sixth Amendment, double jeopardy principles do not apply to individual aggravating factors). Indeed, our Supreme Court has admonished that extending Apprendi might lead to unintended results. State v. Mills, 154 Wash.2d 1, 9-10, 109 P.3d 415 (2005) (reasoning that to "slavishly" apply the Ring and Apprendi functional equivalent language would disturb carefully crafted legislative procedure).
¶ 18 Two recent Washington cases have discussed what "functional equivalent" means. In State v. Powell, 167 Wash.2d 672, 223 P.3d 493 (2009), the Supreme Court considered whether the Apprendi "functional equivalent" language requires the State to allege an aggravating factor before trial in the charging document. Six justices apparently believe that it does; four believe that notice after trial but before a jury hearing on the aggravating factors satisfies the Sixth Amendment. Powell does not apply here because Hylton has not raised a notice issue. And Powell does not change the reasoning in Benn that aggravating factors are not the same as elements of a crime for sentencing purposes. See also State v. Eggleston, 164 Wash.2d 61, 70-71, 187 P.3d 233 (2008). Six of the Powell justices agreed that whatever affect Powell's argument had on the notice issue, it did not extend to due process or double jeopardy concerns. Powell, 167 Wash.2d 672, 685-88, 223 P.3d 493 (lead opinion) and 167 Wash.2d at 689-90, 167 Wash.2d 672 (Stephens, J., concurring in result).
¶ 19 Division One of this court also recently considered the scope of aggravating factors as the "functional equivalent" of elements *252 of a crime. State v. Gordon, 153 Wash.App. 516, 223 P.3d 519 (2009). The court held that "aggravating factors are elements of the crime for purposes of instructing the jury on exceptional sentencing." Gordon, 153 Wash.App. 516, 533-34, 223 P.3d 519. But the court qualified this statement by explaining that nothing in its holding suggests that aggravating factors are elements of the substantive crime, only that aggravating factors must be treated as elements of an aggravated form of the crime for the purposes of jury instructions and the Sixth Amendment. Gordon, 153 Wash.App. 516, 533-34 n. 10, 223 P.3d 519 (citing State v. Roswell, 165 Wash.2d 186, 194, 196 P.3d 705 (2008)). Because aggravating factors are not the same as elements of crime under all circumstances, we reject Hylton's argument that the addition of the abuse of trust factor is a per se substantive change to the SRA.
¶ 20 Although adding abuse of trust to the SRA constitutes some form of change, it does not affect Hylton's substantive rights. In Pillatos, the court reasoned that because both the past and present law allow for exceptional sentences, the procedural changes in the SRA did not violate the savings clause. Pillatos, 159 Wash.2d at 473, 150 P.3d 1130; see RCW 9.94A.345. Just like the defendants in Pillatos, Hylton was eligible for an exceptional sentence under the law as it existed at the time he committed the crime. See Pillatos, 159 Wash.2d at 473, 475, 150 P.3d 1130; see also State v. McNeal, 142 Wash.App. 777, 793, 175 P.3d 1139 (2008) (defendant had no "vested right" to a standard range sentence without consideration of exceptional sentencing factors). Applying RCW 9.94A.535 did not alter his penalty, increase the status of his crime, or change the facts the State had to prove to support an aggravating factor. See Hodgson, 108 Wash.2d at 669, 740 P.2d 848. Moreover, because the amended statute did not alter the consequences of the crime, Hylton was not prejudiced from lack of notice. See Pillatos, 159 Wash.2d at 470, 150 P.3d 1130.
¶ 21 Hylton argues, however, that the fact that abuse of trust may have been a permissible nonstatutory aggravator prior to 2005 is irrelevant to whether the 2005 amendment is retroactive. Hylton cites no authority for this proposition, but simply notes that "everything else under the sun" was also a possible aggravator because the statutory list was nonexclusive. Br. of Appellant at 42. We acknowledge that the statutory list was nonexclusive, but that does not mean the common law abuse of trust aggravator was invalid. See generally Pillatos, 159 Wash.2d at 472-73, 150 P.3d 1130. We disagree with Hylton that the pre-2005 common law abuse of trust is somehow irrelevant to the question of whether the 2005 amendments created a substantive change to the SRA.

iii. Ex Post Facto Analysis
¶ 22 Hylton also argues that applying a new, disadvantageous sentencing guideline to conduct occurring before its enactment violates the ex post facto clauses of the state and federal constitutions.
¶ 23 The ex post facto clauses of the federal and state constitutions forbid the State from enacting laws that punish an act that was not punishable when committed or that increase the punishment for the crime committed. In re Pers. Restraint of Powell, 117 Wash.2d 175, 184, 814 P.2d 635 (1991); see U.S. Const. art. I, §§ 9, 10; Wash.Const. art. I, § 23. A statute or amendment violates the ex post facto clause if it (1) is substantive, as opposed to merely procedural; (2) is retrospective; and (3) disadvantages the defendant affected by its enactment. Powell, 117 Wash.2d at 185, 814 P.2d 635; see also Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). A statute or amendment does not apply retrospectively just because it may apply to conduct predating its enactment statutes. Landgraf v. USI Film Prods., 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). A new law is retrospective only if it "`changes the legal consequences of acts completed before its effective date.'" Miller, 482 U.S. at 430, 107 S.Ct. 2446 (quoting Weaver v. Graham, 450 U.S. 24, 31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)); see also Pape v. Dep't of Labor & Indus., 43 Wash.2d 736, 740-41, 264 P.2d 241 (1953). In the context of an act already criminally punishable, disadvantage means the statute alters the standard *253 of punishment that existed under the prior law. Pillatos, 159 Wash.2d at 476, 150 P.3d 1130.
¶ 24 The 2005 amendments were neither retrospective, nor did they disadvantage Hylton.[6] First, the 2005 amendments did not change the legal consequences of any underlying conduct. The legislature specifically noted its intention to create a new criminal procedure, and to codify existing common law aggravating factors, without expanding or restricting the aggravating circumstances. Laws of 2005, ch. 68, § 1. RCW 9.94A.535 therefore did not create a new crime, increase the punishment for Hylton's crime, or deprive him of a defense. See Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Hylton's argument that the "new" statutory factor creates liability for factors previously unlisted is disingenuous and obscures the intended effect of the 2005 amendments. State v. Schmidt, 100 Wash.App. 297, 299, 996 P.2d 1119 (2000) (the purposes of the ex facto clause are to ensure that legislative acts give fair warning of their effect and prevent arbitrary and potentially vindictive legislation). Since the changes to the SRA do not affect the consequences for any underlying crime or aggravating factor, Hylton was effectively on notice of the punishment at the time the crime was committed. Pillatos, 159 Wash.2d at 470-71, 150 P.3d 1130.
¶ 25 Moreover, the validity of exceptional sentences before the 2005 amendments is not an issue in analyzing whether a later statute violates ex post facto principles; notice that certain conduct was illegal and carried certain consequences is all that is required to defeat an ex post facto claim. Pillatos, 159 Wash.2d at 475, 150 P.3d 1130 ("[T]he key is whether the defendant had notice of the punishment at the time of the crime, not whether in some metaphysical sense, a constitutional statute existed at the time of the crime.") (emphasis omitted) (citations omitted).
¶ 26 Hylton has not shown that he faced a presumptively higher sentencing range, or was otherwise aggrieved by the trial court's application of the statutory abuse of trust aggravator. And because his conduct was purposeful, both the common law aggravating factor and the new statutory aggravating factor result in the same sentencing enhancement. The State also fully complied with the procedural changes mandated by Blakely: the State alleged in the information that it was seeking an abuse of trust aggravator; the issue was submitted to the jury; and the jury had to find the aggravating factor beyond a reasonable doubt. RCW 9.94A.535. Hylton has failed to demonstrate an ex post facto violation.
¶ 27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR: QUINN-BRINTNALL, J., and VAN DEREN, C.J.
NOTES
[1] Hylton also claims the State "erred" in charging the aggravating factor.
[2] At an earlier hearing, the court granted defense counsel's request to withdraw and appointed standby counsel to assist Hylton, who proceeded pro se.
[3] The court also noted that Hylton had not given notice to the State under the rape shield statute.
[4] In his brief, Hylton states that this comment referred to Sandra Eschbach. The record, however, supports only that the comment referred to A.A.A.
[5] Laws of 2005, chapter 68, referred to as "S.B. 5477" in the appellant's brief, was enacted to conform the SRA to the ruling in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In that case, the court held that a criminal defendant has a constitutional right to have a jury determine beyond a reasonable doubt any aggravating fact that is used to impose a greater punishment than the standard range or conditions.
[6] Where a statute is merely procedural and applied retroactively, a court need not address a defendant's ex post facto argument. Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Because it is not clear whether all the 2005 amendments were procedural, we address the other factors of an ex post facto violation.