FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 40553-9-II |
| ROBIN TAYLOR SCHREIBER, | PART PUBLISHED OPINION |
| Petitioner. | |

WORSWICK, P.J. — After a jury trial, Robin Schreiber was convicted of second degree murder with a firearm sentencing enhancement. He received an exceptional sentence because his victim was a law enforcement officer. Schreiber argues, among other things, that the trial court violated his right to a public trial. In the published portion of this opinion, we hold that Schreiber fails to establish actual and substantial prejudice resulting from any courtroom closure. In the unpublished portion of this opinion, we hold that Schreiber fails to establish any other claim of unlawful restraint. Accordingly, we deny his personal restraint petition.

## FACTS

Robin Schreiber was convicted of second degree murder in the 2004 death of Clark County Sheriff's Sergeant Brad Crawford. Some aspects of his trial were shielded from the public view. First, during jury selection, the trial court gave prospective jurors a confidential

questionnaire. We assume arguendo that these jury questionnaires were filed under seal.[1]

Second, in response to a report that two prospective jurors saw Schreiber in handcuffs in the

hallway, the trial court and counsel for both parties privately questioned the prospective jurors in

chambers, after Schreiber's counsel waived Schreiber's right to be present. Third, according to

Schreiber, spectators were excluded from the courtroom during voir dire due to a lack of space.

And fourth, according to Schreiber, the trial court directed the bailiff to speak privately with an

empaneled juror.

A jury ultimately found Schreiber guilty of intentional second degree murder. Schreiber

appealed, and we affirmed in an unpublished decision. This personal restraint petition followed.

ANALYSIS

PERSONAL RESTRAINT PETITION PRINCIPLES

When considering constitutional arguments raised in a personal restraint petition, we

determine whether the petitioner can show that a constitutional error caused actual and

substantial prejudice. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014)

(plurality opinion). A stricter standard governs our consideration of nonconstitutional arguments

raised in a personal restraint petition. When considering nonconstitutional arguments, we

determine whether the petitioner has established that the claimed error is "a fundamental defect

resulting in a complete miscarriage of justice." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18,

296 P.3d 872 (2013).

---

[1] Schreiber avers that the completed questionnaires were filed under seal. But the trial judge declared that although the questionnaires purported to be confidential, they were never ordered sealed.Response

No. 40553-9-II

A personal restraint petition must state with particularity the factual allegations underlying the petitioner's claim of unlawful restraint. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are not sufficient. *Rice*, 118 Wn.2d at 886.

Petitioner's allegations must also have evidentiary support. *Rice*, 118 Wn.2d at 886. If the trial court record does not support the factual allegations, then the petitioner must show through affidavits or other forms of corroboration that competent and admissible evidence will establish the factual allegations. *Rice*, 118 Wn.2d at 886. The petitioner may not rely on mere speculation, conjecture, or inadmissible hearsay. *Rice*, 118 Wn.2d at 886. A personal restraint petition cannot renew an issue that was raised and rejected on direct appeal, unless the interests of justice require the issue's relitigation. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004).

If the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect, we deny the personal restraint petition. *Yates*, 177 Wn.2d at 17-18. If the petitioner makes such a showing, but the record is not sufficient to determine the merits, we remand for a reference hearing. *Yates*, 177 Wn.2d at 17-18. If, however, we are convinced the petitioner has proven actual and substantial prejudice or a fundamental defect, we grant the petition. *Yates*, 177 Wn.2d at 17-18.

RIGHT TO A PUBLIC TRIAL

Schreiber argues that he is entitled to relief from restraint because the trial court violated his right to a public trial by closing the proceedings without conducting the analysis required by *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). We disagree, holding that

3

No. 40553-9-II

Schreiber fails to make out a prima facie showing of actual and substantial prejudice caused by any closure.

The Washington Constitution protects a criminal defendant's right to a public trial. WASH. CONST. art. I, § 22. A trial court may close a courtroom only if closure is warranted under the five-part test set forth in *Bone-Club*, 128 Wn.2d at 258-59. Closing a courtroom without first conducting the required *Bone-Club* analysis is a structural error. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).

A.    *Actual and Substantial Prejudice Standard*

On direct review, a public trial violation requires reversal regardless of whether the defendant has shown prejudice. *Paumier*, 176 Wn.2d at 37. But in a personal restraint petition, the petitioner bears the burden of demonstrating that a constitutional violation caused actual and substantial prejudice. *Coggin*, 182 Wn.2d at 119 (plurality opinion).

In *Coggin* and *Speight*, our Supreme Court recently held that a petitioner must show actual and substantial prejudice to prevail on collateral review of an alleged public trial violation. *Coggin*, 182 Wn.2d at 120-22 (plurality opinion); *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 107, 340 P.3d 207 (2014) (plurality opinion). In both *Coggin* and *Speight*, Chief Justice Madsen filed concurring opinions agreeing with the decision to deny the petitions, but on the ground that the petitioners invited the closure. *Coggin*, 182 Wn.2d at 123 (Madsen, C.J., concurring); *Speight*, 182 Wn.2d at 108 (Madsen, C.J., concurring). Chief Justice Madsen made clear, however, that she agreed with the plurality that a petitioner must show actual and substantial prejudice to prevail on a public trial claim on collateral review. *Coggin*, 182 Wn.2d at 123 (Madsen, C.J., concurring); *Speight*, 182 Wn.2d at 108 (Madsen, C.J., concurring). Thus,

4

No. 40553-9-II

*Coggin* and *Speight* require a petitioner to make a showing of actual and substantial prejudice resulting from a public trial violation to prevail on collateral review.

B.    *Schreiber Fails To Show Actual and Substantial Prejudice*

Schreiber claims that the trial court violated his right to a public trial four times, by failing to conduct *Bone-Club* hearings before (1) giving prospective jurors confidential questionnaires that were later filed under seal, (2) excluding spectators from voir dire due to a lack of space in the courtroom, (3) questioning two prospective jurors in chambers, and (4) directing the bailiff to speak privately with a juror during the trial. It is undisputed that the trial court conducted no *Bone-Club* hearings.

But even assuming closures occurred, Schreiber neither argues nor demonstrates that any of these closures caused him actual and substantial prejudice. Schreiber argues only that these closures were structural errors requiring reversal. Because Schreiber is required to demonstrate actual and substantial prejudice, his public trial arguments fail.[2] *Coggin*, 182 Wn.2d at 122.

For these reasons and those stated in the unpublished portion of this opinion, we deny Schreiber's petition.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[2] Schreiber argues for the first time in a supplemental brief that regardless of the actual and substantial prejudice standard in Washington, his claim warrants automatic reversal under the federal constitution. We decline to address this argument. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

5

ADDITIONAL ARGUMENTS

Schreiber also argues that we should grant his personal restraint petition because (1) the trial court violated his right to be present; (2) his appellate counsel was ineffective for failing to argue that a forensic expert's testimony violated Schreiber's right to confront the witnesses against him; (3) newly discovered evidence of the forensic expert's misfeasance and malfeasance warrants vacation of his conviction; (4) the trial judge and presiding juror slept during his trial; (5) the trial court violated Schreiber's right to confront the witnesses against him by limiting cross-examination of an eyewitness and refusing to allow discovery of the eyewitness's psychological records; (6) the evidence was insufficient to support the jury's special verdict on the firearm enhancement, and the trial court erred by instructing the jury on the firearm enhancement; and (7) the law enforcement aggravating factor did not exist at the time of Schreiber's offense, so the trial court applied an ex post facto law that codified the aggravating factor. We disagree, holding that Schreiber fails to establish any prima facie claim of actual and substantial prejudice or fundamental defect resulting in a complete miscarriage of justice. *See Yates*, 177 Wn.2d at 17.

ADDITIONAL FACTS

Sergeant Crawford, the police officer whom Schreiber killed, was among the officers who responded to a 911 call reporting that Schreiber was extremely upset, armed with a rifle, and alone in his house. A standoff at Schreiber's house ensued.

Inside his house, Schreiber drank beer, pointed his rifle at patrol cars and officers, and called his ex-wife to say that she would not have to worry about him anymore. Eventually, Schreiber crawled from his house to his truck, carrying the rifle with him. While he crawled,

Schreiber periodically put the rifle to his shoulder and pointed it in the direction of a patrol car and police officers. When Schreiber reached his truck, he again lifted the rifle to his shoulder and pointed it toward the patrol car and police officers.

Schreiber drove his truck across a field, through a barbed wire fence, and onto his neighbor's driveway before reaching a street. While he drove, Schreiber raised a metal object in the direction of a police officer. Then, with four officers in pursuit, Schreiber turned a corner and struck Sergeant Crawford's patrol car, which was parked off the roadway. Sergeant Crawford died from injuries sustained in the collision. Schreiber's rifle was found inside his truck.

The State charged Schreiber with premeditated first degree murder or, in the alternative, second degree murder under both an intentional murder theory and a felony murder theory. *See* RCW 9A.32.030(1)(a)-(b), .050(1)(b).

At trial, the State elicited testimony from Corporal Duane Boynton, a Vancouver Police officer and trained negotiator who was an eyewitness to the standoff and the fatal collision. Before trial, Schreiber had requested discovery of a psychologist's records made when treating Corporal Boynton for trauma resulting from the incident. The trial court refused Schreiber's request and further limited cross-examination by prohibiting questions about Corporal Boynton's diagnosis or the identity of his treating psychologist.

In his defense, Schreiber argued that the fatal collision occurred because he was extremely intoxicated, not because he acted with premeditation or intent to harm Sergeant Crawford. To counter this argument, the State elicited expert forensic testimony from Ann Marie Gordon of the state toxicology lab. Gordon testified to results of her own testing of

Schreiber's blood-alcohol sample as well as to the results of testing conducted by another forensic technician; both found that Schreiber's blood tested above the legal alcohol limit for driving. About one year after Schreiber's trial, Gordon resigned from the lab because it became known that she routinely certified breath testing machine quality-assurance samples without personally testing them and that her laboratory colleagues covered up her misconduct.

As mentioned above, the jury found Schreiber guilty of intentional second degree murder. In special verdicts, the jury found facts establishing a firearm sentencing enhancement and the aggravating sentencing factor that Sergeant Crawford was a law enforcement officer performing his official duties. The trial court imposed an exceptional sentence of 347 months.

ADDITIONAL ANALYSIS

I. RIGHT TO BE PRESENT

Schreiber argues that the trial court's private, in-chambers questioning of two prospective jurors in Schreiber's absence violated his right to be present. But this argument fails because Schreiber fails to show actual and substantial prejudice.

At its core, the right to be present entitles a defendant to be present when evidence is offered against him. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). When a personal restraint petitioner claims that his right to be present was violated, he must "explain how his absence affected the outcome of any of the challenged proceedings or conferences" in order to establish actual and substantial prejudice. *Lord*, 123 Wn.2d at 307.

Schreiber fails to explain how his absence affected the outcome of the trial court's in-chambers proceeding. Instead, Schreiber baldly asserts that his presence "could have made a

8

meaningful difference in the outcome."[3] Petition at 13. This bald assertion is not sufficient to support a claim of unlawful restraint. *Rice*, 118 Wn.2d at 886.

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Next, Schreiber argues that his appellate counsel rendered ineffective assistance by failing to argue in Schreiber's direct appeal that the State's forensic expert's testimony violated Schreiber's right to confront the witnesses against him.[4] We disagree.

To prevail on a claim of ineffective assistance of appellate counsel, petitioners must show "'that the legal issue which appellate counsel failed to raise had merit and that [the petitioners] were actually prejudiced by the failure to raise the issue.'" *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004) (quoting *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997)). Schreiber's ineffective assistance of appellate counsel claim requires us to consider whether his current challenge—that Gordon's testimony violated his confrontation clause rights—had merit, and if so, whether Schreiber was actually prejudiced by appellate counsel's failure to raise these issues on direct appeal. *Dalluge*, 152 Wn.2d at 787. Appellate counsel is not ineffective for failing to raise all possible nonfrivolous issues on appeal. *Dalluge*, 152 Wn.2d at 787. But a claim must have merit to satisfy the *Dalluge* test's first prong. *Dalluge*, 152 Wn.2d at 787.

---

[3] Schreiber further suggests that the exclusion of one prospective juror after the in-chambers questioning was improper. But Schreiber does not argue that the prospective juror's excusal was improper or explain how his presence could have affected the trial court's decision to excuse the prospective juror. Therefore, we do not consider this issue. RAP 10.3(a)(6).

[4] Schreiber also argues that Gordon's forensic testimony violated his Sixth Amendment confrontation clause rights. But Schreiber neither argues nor demonstrates that any confrontation clause violation caused him actual and substantial prejudice, so this claim fails. *See Coggin*, 182 Wn.2d at 122.

Schreiber claims that his appellate counsel was deficient for failing to argue on direct appeal that his confrontation right was violated when Gordon, the State's forensic expert, testified to the result of blood alcohol tests that were performed by another technician who was not available for cross-examination. Gordon testified that, because the technician was not available to testify against Schreiber, she personally re-tested Schreiber's blood sample almost two years later. Gordon's own result was 0.13, slightly lower than the technician's earlier results, which averaged 0.14. Gordon testified that unavoidable evaporation explained the difference, and Schreiber's own forensic experts agreed. Moreover, Schreiber's experts and his trial counsel relied upon the unavailable technician's earlier result of 0.14 to establish the defense of extreme intoxication.

Schreiber's claim of ineffective assistance of appellate counsel fails because his confrontation clause claim had no merit. *Dalluge*, 152 Wn.2d at 787. Because the absent technician's test results supported Schreiber's defense, his trial counsel made a tactical decision to waive the confrontation right below. Schreiber's forensic experts agreed with and relied upon the absent technician's higher blood alcohol test which now forms the basis of his confrontation clause claim. And Schreiber's trial attorney used the absent technician's test in support of his intoxication theory.

Trial counsel may waive a defendant's confrontation clause rights as a matter of trial strategy without the defendant's express waiver. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.3, 327, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). Because Schreiber's trial counsel strategically waived his confrontation clause claim to establish his defense of extreme

10

intoxication, the confrontation clause claim had no merit on appeal.[5] *See Dalluge*, 152 Wn.2d at 787.

Thus, Schreiber's appellate counsel was not deficient for failing to raise this claim on direct appeal and Schreiber's argument fails.

### III. NEWLY DISCOVERED EVIDENCE

Schreiber further argues that a new trial is warranted in light of newly discovered evidence about Gordon's misfeasance and malfeasance regarding her improper quality-assurance sample certifications. We disagree.

Under RAP 16.4(c)(3), a claim of unlawful restraint may be based on the existence of material facts that have not previously been presented and that, in the interest of justice, require the conviction's vacation. But when the newly discovered evidence is merely cumulative or impeaching, we will not consider the petitioner's claim. *In re Pers. Restraint of Stenson*, 150 Wn.2d 207, 217, 76 P.3d 241 (2003).

After Schreiber's trial, it became known that Gordon certified breath testing machine quality-assurance samples without personally testing them and that her laboratory colleagues "falsified records to cover up the misconduct." Petition (App. B); *City of Seattle v. Holifield*, 170 Wn.2d 230, 234, 240 P.3d 1162 (2010). Gordon's misfeasance and malfeasance involved devices used for *breath* tests, but here Gordon testified to the results of tests on samples of

---

[5] Nor would the claim have merit on appeal if framed as an ineffective assistance of counsel argument, because the decision to rely on the absent technician's higher blood alcohol results was a legitimate trial tactic. *See State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) ("[T]he defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'") (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Schreiber's blood. Schreiber provides no evidence to suggest that Gordon's misfeasance and malfeasance involved any device, test, or testing protocol used for blood tests. And Schreiber offers no new evidence about his intoxication. Thus, the only value of Schreiber's new evidence is for impeachment.

Arguing to the contrary, Schreiber relies on Division One's decision in *State v. Roche*, 114 Wn. App. 424, 437-38, 59 P.3d 682 (2002). But in *Roche*, the analyst's malfeasance created a chain of custody problem, implicated an element of the offense charged, and devastated the State's ability to prove the charges. *See* 114 Wn. App. at 436, 440. Such is not the case here, thus *Roche* does not control our decision and Schreiber's argument fails. *See Stenson*, 150 Wn.2d at 218.

## IV. JUDGE AND JUROR MISCONDUCT

Schreiber next argues that he is entitled to a new trial because the trial judge and a juror each slept through portions of the trial.[6] We disagree because Schreiber fails to establish a prima facie case of either actual and substantial prejudice or a fundamental defect inherently resulting in a complete miscarriage of justice.

---

[6] In an argument's heading, Schreiber also states that his trial counsel was ineffective for failing to request a mistrial on these grounds. But Schreiber fails to include any legal argument or citations to authority developing this ineffective assistance claim. *See* Petition at 33-35. Such passing treatment of an issue does not merit judicial consideration. *In re Pers. Restraint of Bratz*, 101 Wn. App. 662, 668 n.3, 5 P.3d 759 (2000); *see* RAP 16.7(a)(2)(ii).

Moreover, Schreiber fails to provide factual support for the deficiency prong of an ineffective assistance claim because the record and declarations do not show that Schreiber's trial counsel knew or should have known that the judge or juror were asleep. Thus, even if Schreiber had developed this ineffective assistance claim with legal argument and citations to authority, it would fail for lack of evidentiary support.

A.  *Allegedly Sleeping Judge*

Schreiber claims that the trial judge committed a structural error by sleeping during the trial. Schreiber supports this claim with his own affidavit. The State contests the factual basis of this claim with an affidavit from the trial judge, who denied "sleeping or dozing during the trial." Despite this factual discrepancy, a reference hearing is not warranted because Schreiber fails to establish a prima facie case of either actual and substantial prejudice resulting from a constitutional error or a fundamental defect inherently resulting in a complete miscarriage of justice.

1. *Constitutional Error*

Schreiber does not claim that the trial judge's alleged sleeping caused any specific error. Nor does he claim that the judge's conduct caused him actual and substantial prejudice. Under these circumstances, Schreiber has failed to provide a basis for us to conclude that his "conviction was obtained . . . in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2).

2. *Fundamental Defect*

Apparently claiming the occurrence of a nonconstitutional but fundamental defect, Schreiber claims that because "the judge slept through any portion of trial, he was functionally absent—a structural error mandating reversal." Petition at 35. We disagree because Schreiber fails to state with particularity the facts underlying his claim that the trial court was "functionally absent" and, in the alternative, Schreiber fails to show a fundamental defect inherently resulting in a complete miscarriage of justice. Petition at 35.

13

First, Schreiber's claim that the trial judge was "functionally absent" is conclusory because it is not supported by factual allegations that are stated with particularity. Petition at 35. Schreiber fails to identify any omission (such as a failure to make a ruling) or act (such as a ruling affected by the trial judge's having slept) that could provide a basis on which to conclude that the trial judge failed to discharge his functions. Therefore, his claim that the trial judge was functionally absent is a conclusory allegation, which is not sufficient in a personal restraint petition. *Rice*, 118 Wn.2d at 886.

Second, although it would be very troubling to learn that the trial judge slept through any portion of the trial, Schreiber fails to show here that it was a fundamental defect resulting in an inherent miscarriage of justice. Accordingly, this claim fails.[7]

B.    *Sleeping Juror*

In addition, Schreiber claims that the presiding juror "did not hear significant testimony" because she was sleeping. Petition at 35. But citing *State v. Hughes*, 106 Wn.2d 176, 204, 721 P.2d 902 (1986), Schreiber concedes that "[a] single juror's slumber is not *per se* plain error." Petition at 35. Schreiber then fails to argue that the juror's slumber was either a constitutional violation causing actual and substantial prejudice or a fundamental defect inherently resulting in a complete miscarriage of justice. Accordingly, he fails to make a prima facie showing warranting relief, and his claim fails.

---

[7] We note that courts in other jurisdictions have upheld convictions challenged on the ground that the trial judge fell asleep. *United States v. White*, 589 F.2d 1283, 1289 (5th Cir. 1979) (holding that a trial judge did not commit reversible error by falling asleep during the defendant's opening statement); *Hummel v. State*, 617 N.W.2d 561, 564 (Minn. 2000) (holding that a postconviction petitioner failed to show prejudice resulting from his trial counsel's failure to object to an allegedly sleeping judge).

## V. RIGHT TO CONFRONT AN EYEWITNESS

Schreiber next attempts to renew an argument made in his direct appeal by arguing that the trial court violated his right to confront the witnesses against him when it limited cross-examination of Corporal Boynton and refused to allow discovery of Corporal Boynton's psychological records. We do not allow Schreiber to renew this argument.

A personal restraint petition cannot renew an argument that was raised and rejected on direct appeal unless the interests of justice require the argument's relitigation. *Davis*, 152 Wn.2d at 671. Schreiber does not assert that the interests of justice require relitigation. He claims only that the decision in his direct appeal incorrectly concluded, without examining the sealed psychological records, that any error was harmless beyond a reasonable doubt. This claim is insufficient to allow Schreiber to renew this argument.

## VI. FIREARM ENHANCEMENT

Schreiber further claims that (1) evidence was insufficient to support the jury's special verdict finding that Schreiber was armed with a firearm and (2) the trial court's jury instructions relating to the special verdict were ambiguous.[8] We disagree.

A. *The Evidence Was Sufficient To Prove the Firearm Enhancement*

Schreiber claims that the evidence was insufficient to support the jury's special verdict on the firearm enhancement. We disagree.

---

[8] In an argument's heading, Schreiber further states that his appellate counsel was ineffective for failing to raise these issues in his direct appeal. Schreiber's petition fails to include any legal argument or citations to authority developing this ineffective assistance claim. Thus, we do not consider it. RAP 10.3(a)(6).

When a defendant challenges the sufficiency of evidence supporting a firearm enhancement, we examine the record to decide whether any rational trier of fact could have found that the defendant was armed. *State v. Eckenrode*, 159 Wn.2d 488, 494, 150 P.3d 1116 (2007) (plurality opinion). In a sufficiency of the evidence challenge, the defendant admits the truth of all the State's evidence, and we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *Eckenrode*, 159 Wn.2d at 494; *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Whether a defendant was armed with a firearm is a fact specific determination. *State v. Neff*, 163 Wn.2d 453, 462, 181 P.3d 819 (2008) (plurality opinion). A defendant was armed with a firearm if (1) the firearm was easily accessible and readily available for use either for offensive or defensive purposes, and (2) there was a nexus between the defendant, the firearm, and the crime. *Eckenrode*, 159 Wn. 2d at 491.

1. *Easily Accessible and Readily Available for Use*

Here, the evidence was sufficient to show that Schreiber's firearm was easily accessible and readily available for use. The State elicited testimony that Schreiber carried the rifle from the house into the truck, periodically raising it and pointing it toward police officers. The evidence also showed that Schreiber raised a metal object at a police officer while driving the truck. The rifle was found loaded in the truck after the fatal collision. Thus, a rational trier of fact could have found that the rifle was easily accessible and readily available for use.

2. *Nexus Between the Defendant, the Weapon, and the Crime*

To establish that a defendant was armed for purposes of proving the sentencing enhancement, the State must establish a connection between the defendant, the weapon and the

16

crime. *Eckenrode*, 159 Wn.2d at 491. There must be a connection between the defendant and the weapon and there must be a connection between the weapon and the crime. *See State v. Gurske*, 155 Wn.2d 134, 141-42, 118 P.3d 333 (2005).

First, sufficient evidence demonstrates Schreiber's connection to the firearm. Having crawled with the rifle from his house to his truck, Schreiber held the rifle during the standoff and while police cars chased him. The evidence showed that he raised the rifle in the direction of police officers several times, and raised a metal object (presumably the rifle) at a police officer while driving the truck. Therefore, the evidence shows a connection between Schreiber and the rifle.

Second, the evidence, viewed in the light most favorable to the State, shows a connection between the weapon and the crime. Whether there is a connection between the weapon and the crime may depend on "'the nature of the crime, the type of weapon, and the circumstances under which the weapon is found.'" *Gurske*, 155 Wn.2d at 142 (quoting *State v. Schelin*, 147 Wn.2d 562, 570, 55 P.3d 632 (2002) (plurality opinion)).

Here, the nature of this intentional second degree murder is a fatal motor vehicle collision that occurred during Schreiber's flight from an armed standoff, during which he pointed his rifle at the police officers several times. Further, Schreiber's loaded rifle was found inside his truck after the fatal collision, and a rational trier of fact could have concluded that the rifle was the metal object Schreiber waved at the police officers while driving the truck. Given these circumstances, a rational trier of fact could conclude beyond a reasonable doubt that the rifle was connected to the crime. Schreiber's sufficiency argument fails.

B.      *The Jury Instructions Were Not Ambiguous*

Schreiber next claims that the jury instruction regarding the firearm enhancement was ambiguous. Petition at 40. Schreiber appears to argue that the trial court erred by instructing the jury in a manner that relieved the State of its burden to prove each element beyond a reasonable doubt. *See State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1996). We disagree.

We review alleged errors of law in jury instructions de novo. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are proper when, viewed as a whole, they allow each party to argue its theory of the case, they do not mislead the jury, and they inform the jury of the applicable law. *Barnes*, 153 Wn.2d at 382; *State v. McCreven*, 170 Wn. App. 444, 461-62, 284 P.3d 793 (2012). A jury instruction "'must make the relevant legal standard manifestly apparent to the average juror.'" *McCreven*, 170 Wn. App. at 462 (internal quotation marks omitted) (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996))).

Here, the trial court's instruction was unambiguous on its face. In relevant part, the trial court's instruction stated:

> A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime. In determining whether this connection existed, you should consider the nature of the crime, the type of firearm, and the circumstances under which the firearm was found.

Petition (App. A at jury instruction 33).

Contending that the instruction was ambiguous because the jurors misunderstood it, Schreiber requests a reference hearing "where jurors can be examined, not to impeach their verdict, but to demonstrate the reasonableness of a reasonable person misinterpreting the

instruction." Reply at 20. But this request misapprehends Schreiber's burden. We will remand for a reference hearing only if a personal restraint petition first makes a prima facie showing of actual prejudice resulting from constitutional error or a fundamental defect resulting in a complete miscarriage of justice. *Yates*, 177 Wn.2d at 17-18. Schreiber's request fails for two reasons.

First, the sole support for Schreiber's claimed ambiguity is an affidavit from his trial counsel, who spoke with the presiding juror after deliberations. According to the affidavit, the presiding juror told Schreiber's trial counsel that "she understood that the instructions did not require any connection between the gun and the crime in order for the [firearm] enhancement to apply." Petition (App. A at 3). But the affidavit is inadmissible hearsay, and therefore Schreiber cannot rely on it to establish a prima facie case of actual prejudice or a fundamental defect resulting in a complete miscarriage of justice. ER 801, 802; *Rice*, 118 Wn.2d at 886.

Second, reviewing the instruction de novo, we hold that it is unambiguous on its face. Even if we were to consider the juror's statement, it cannot form the basis for a claim of instructional error. Our review is not for whether an individual juror mentions a potential ambiguity in a jury instruction. Instead, we consider whether the jury instructions, when read as a whole, make the relevant legal standard manifestly apparent to the average juror. *McCreven*, 170 Wn. App. at 462.

Because Schreiber bases his claim on inadmissible hearsay and because the instruction is unambiguous on its face, this argument fails.

## VII. LAW ENFORCEMENT AGGRAVATING FACTOR

Lastly, Schreiber claims that the trial court erred by imposing an exceptional sentence based on Sergeant Crawford's status as a law enforcement officer. Specifically, Schreiber claims (1) the law enforcement aggravating factor did not exist in 2004 at the time of Schreiber's crime and (2) application of the aggravating factor that was statutorily codified in 2005 violated the constitutional prohibition against ex post facto laws. These arguments lack merit.

Under *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), a sentencing court may impose an exceptional sentence only after a jury has found, beyond a reasonable doubt, the existence of aggravating facts justifying the exceptional sentence. After *Blakely*, the legislature amended the Sentencing Reform Act (SRA) of 1981, chapter 9.94A RCW, "to create a new criminal procedure for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances." LAWS OF 2005, ch. 68, § 1.

A. *The Law Enforcement Aggravating Factor Existed*

Schreiber first claims that the law enforcement aggravating factor did not exist at the time of his crime because the legislature had not yet enacted it into law. He argues that the law enforcement aggravating factor is the functional equivalent of a crime and, therefore, because the legislature alone may create crimes, the aggravating factor was invalid before the legislature codified it in 2005 (after Schreiber's crime). We disagree.

At the time of Schreiber's crime, Washington's common law recognized a law enforcement aggravating factor. *State v. Anderson*, 72 Wn. App. 453, 466, 864 P.2d 1001 (1994)

20

("[A] defendant's assault on a victim he knows is a police officer justifies an exceptional sentence."). The legislature codified this existing aggravating factor after Schreiber's crime in Laws of 2005, chapter 68.

A conviction based on a nonexistent crime is a constitutional error that causes actual and substantial prejudice. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 860, 100 P.3d 801 (2004). The legislature has the exclusive authority to define crimes. *State v. Wissing*, 66 Wn. App. 745, 755, 833 P.2d 424 (1992), *review denied*, 120 Wn.2d 1017-18 (1992).

For purposes of the right to a jury trial, an aggravating factor that increases a sentence "beyond the maximum authorized statutory sentence . . . is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *see also Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (quoting *Apprendi*, 530 U.S. at 494 n.19) (following *Apprendi* and holding that facts underlying sentencing aggravators are "'the functional equivalent of an element of a greater offense'" and must be found by a jury); *State v. Hylton*, 154 Wn. App. 945, 954, 226 P.3d 246 (2010). Thus, Schreiber argues that an aggravating factor is the functional equivalent of a crime, and because the legislature has the exclusive power to define crimes, no sentencing enhancement is valid unless created by the legislature.

But courts in Washington have repeatedly declined to hold that aggravating factors are the "functional equivalent" of a crime for all purposes. *Hylton*, 154 Wn. App. at 954 ("*Apprendi* does not support the contention that aggravating factors are functionally equivalent to elements of the crime in all instances; the Court held only that any fact that would increase the penalty for

21

a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."); *see also State v. Siers*, 174 Wn.2d 269, 282, 274 P.3d 358 (2012) (holding that aggravating sentencing factors are not the functional equivalent of essential elements that must be charged in an information); *State v. Eggleston*, 164 Wn.2d 61, 71, 187 P.3d 233 (2008) (holding that "the double jeopardy clause did not prevent [the defendant's] retrial on the 'law enforcement' aggravating factor"); *State v. Benn*, 161 Wn.2d 256, 262-64, 165 P.3d 1232 (2007) (declining to treat aggravating factors as equivalent to elements for double jeopardy purposes).

We follow our Supreme Court in *Siers*, *Eggleston*, and *Benn*, as well as our own opinion in *Hylton*, and decline to extend the reach of the "functional equivalent" language. That is, we decline to extend the "functional equivalent" framework to treat an aggravating factor as a crime for purpose of Schreiber's argument. An aggravating factor is not the functional equivalent of a crime such that the legislature has the exclusive power to create it. Thus, the "common law" law enforcement aggravating factor in existence at the time of Schreiber's crime was not invalid.

Furthermore, at the time of Schreiber's crime, the legislature allowed the imposition of noncodified sentencing aggravators. *State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986); *Hylton*, 154 Wn. App. at 955-56. And the 2005 SRA amendments, which codified the law enforcement aggravating factor, changed only the procedural law of sentencing, not the substantive law. *See State v. Pillatos*, 159 Wn.2d 459, 472, 150 P.3d 1130 (2007); *Hylton*, 154 Wn. App. at 955-56. Thus, Schreiber was sentenced under the substantive law existing at the time of his crime, and his argument fails. *See Anderson*, 72 Wn. App. at 466.

No. 40553-9-II

B.    *The Law Enforcement Aggravating Factor Was Not Applied Ex Post Facto*

Schreiber additionally claims that application of an aggravating factor codified in Laws of 2005, chapter 68, violated the constitutional prohibition against ex post facto laws. Petition at 46-49. Our Supreme Court has already rejected this argument. *Pillatos*, 159 Wn.2d at 477; *see also Hylton*, 154 Wn. App. at 956-58. By enacting Laws of 2005, chapter 68, the legislature did not create new aggravating factors but instead codified aggravating factors that existed under "both past and present law." *Pillatos*, 159 Wn.2d at 473. Thus, Schreiber's argument fails.

Because Schreiber has failed to establish any meritorious claims, we deny his petition.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

23